Statement of the case.

JOSEPH WATT FUGATE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Jurors. Voir dire examination. Reasonable doubt.*

   A man's conception of a reasonable doubt is not a proper subject of inquiry when he is presented as a juror in a criminal case and examined on his *voir dire.*

2. SAME. *Estimate of witness.*

   Whether a proffered juror would believe a certain witness for the state on oath is not a proper subject of inquiry upon his *voir dire* examination in a criminal case.

3. SAME. *Evidence. Witnesses differing.*

   Where testimony touching a certain conversation with the accused, unquestionably relating to the deceased, is otherwise competent, it is not rendered inadmissible in evidence because the witnesses fail to corroborate each other in some particulars concerning it.

4. SAME. *Theories. Duty of jury.*

   The rule that where there are two reasonable theories as to the facts of a killing, one favorable and the other unfavorable to the accused, the jury are bound to accept the favorable one, only applies in case the jury be in doubt as to the correctness of the unfavorable one.

5. SAME. *Instructions. Modifications. Harmless error.*

   Where the court instructed the jury in a murder case to the effect that the accused was presumed to be innocent, and that the presumption was an instrument of proof whereby his innocence was established until sufficient evidence should be introduced to overcome it, the erroneous modification of another part of the instruction, charging that the presumption of innocence is not merely a presumption of law, but is evidence in behalf of the accused, by striking out the word "evidence" and inserting "presumption," does not constitute reversible error.

FROM the circuit court of Prentiss county.

HON. EUGENE O. SYKES, Judge.

Fugate, the appellant, was indicted, tried, and convicted of the murder of one Ransom Cunningham, sentenced to be

hanged, and appealed to the supreme court. [The case was heretofore in the supreme court on a former appeal and is reported, *Fugate* v. *State,* 82 Miss., 189.]

On the examination of one of the jurors on his *voir dire* during the last trial he was asked as to his conception and understanding as to what a reasonable doubt was. This question was objected to by the state, and the objection was sustained, to which exception was taken. Another juror was asked on his *voir dire* if he would believe one of the state's witnesses, Roscoe Hoard, on oath. This was objected to, and the objection sustained. The defense excepted, insisting that the juror had heard this witness say something about what defendant had stated in a conversation at Aberdeen to another witness (Moreland), and for that reason defendant was entitled to know whether this juror would believe Hoard or not, as the testimony would be very damaging if witness should believe Hoard.

On the trial the evidence for the state tended to show an unprovoked murder of Cunningham by appellant. This was shown especially by the dying declaration of deceased. There were no other eyewitnesses to the killing except the deceased and the defendant. Defendant's testimony was that he killed deceased in necessary self-defense, being first attacked by him with a heavy article of some kind.

The testimony of Moreland was as follows: "In April, 1902, I was in Aberdeen, and was going up the street, and came up with Joe Watt Fugate and Roscoe Hoard. Fugate was making a good deal of fuss and noise, and I told him he had better hush; that Mr. McKennie would get him; and he said, 'No, he would not,' and he used some cuss words, and said he had killed one man, and they knew it, and he could kill another one; and he walked on a little, and I asked him if he had ever hated about killing that man, and he said: 'No, not a damned bit more than a damned hog or dog.'" Did not remember all the conversation, but they talked of the killing of Ran Cunningham, and he said he aimed to kill him the evening he did kill him; that

he did just what he aimed to do when he started over to Cunningham's house.

Roscoe Hoard testified that in April, 1902, he was in Aberdeen, and walking up the street with Joe Watt Fugate, and Mr. Jim Moreland came up, and he heard the conversation between Moreland and Fugate about Ran Cunningham. "Joe was talking and going on, talking out of the way; and Jim told him to hush; that Mr. McKennie would get him and put him in the cooler; and Fugate said no, he wasn't afraid of him, for he had killed one God damned man, and he would kill another, or something that way; and Jim said to him, 'Don't it never bother you about killing that fellow Cunningham?' and he said: 'No, it don't bother me any more than killing a hog or a dog.'" Did not recollect hearing him say anything about what his purpose was when he left home to go to Cunningham's house the day of the killing.

The twenty-sixth instruction as asked by defendant was as follows: "The court instructs the jury that if, after a careful consideration of the whole evidence in the case, there are two reasonable theories arising out of such evidence as to how the matter in controversy occurred, one favorable to the defendant and the other unfavorable, it is the duty of the jury to accept the theory favorable to the defendant, although the theory favorable to the state is more reasonable, and supported by the stronger evidence." The court modified this instruction by adding the words, "and the jury are in doubt which is the correct theory," after the word "unfavorable."

The twenty-eighth instruction, as asked, was as follows: "The court instructs the jury that the defendant is presumed in law to be innocent of the charge brought against him, and that this presumption of innocence is not merely a presumption of law, but is *evidence* in behalf of the defendant which he is entitled to have considered by the jury in reaching a decision in his case. In other words, this presumption is an instrument of proof created by the law in favor of one accused, whereby his

innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." The court struck out the word "evidence" where it first occurs in the instruction, italicized *supra,* and inserted the word "presumption" instead.

*Boone & Curlee,* for appellant.

The court below erred in not allowing defendant to examine juror Livingston on his *voir dire* examination as to his conception and understanding of a reasonable doubt, in order that he might intelligently exercise the right of peremptory challenge, and we contend that the defendant had a right to know what the juror considered a reasonable doubt, and whether or not said juror in making up his verdict would be influenced by the doubts that might arise in his mind as to which of the two accounts of the killing was the correct one. *Hale* v. *State,* 72 Miss., 144.

The court below erred in not allowing juror Roan to answer question of defendant's counsel as to whether or not he would believe witness Roscoe Hoard on oath. Upon the reading of the record in this cause the court will see that Hoard lived about a mile from the juror, and that he had spoken about the case to the juror, and had talked to the juror about the trip Roscoe Hoard made to Aberdeen, and spoke to him something or other about what occurred between the defendant Fugate and the said witness in Aberdeen. The court will also readily see that the testimony of Roscoe Hoard is very prejudicial to the defendant's interest before the jury.

The assignment of error based on the action of the court in modifying charge No. 28, as asked by the defendant, is well taken. The charge was correct as originally written. It was in this language: "The court instructs the jury that the defendant is presumed under the law to be innocent of the charge brought against him, and that this presumption of innocence is not merely a presumption of law, but is evidence in behalf of

the defendant," etc.   The court struck out the word "evidence" and substituted therefor the words "a presumption," which destroyed the whole effect of the charge upon the question of the presumption of innocence.

The supreme court of the United States, in the case of *Coffin* v. *United States,* 156 U. S., 460, uses this language: "The fact that the presumption of innocence is recognized as a presumption of law and is characterized by the civilians as a *presumptio juris* demonstrates that it is evidence in favor of the accused; for in all systems of law legal presumptions are treated as evidence, giving rise to resulting proof to the full extent of their legal efficacy."   This expression in the Coffin case is reaffirmed in the case of *Agnew* v. *United States,* 165 U. S., 33.

*W. M. Cox,* and *William Williams,* attorney-general, for appellee.

The trial court did not err in refusing to permit appellant to examine juror Livingston as to his conception and understanding of a reasonable doubt.   The language used in *Hale* v. *State,* 72 Miss., 140, is broad, but it must be construed with reference to the facts of that case.   What appellant desired of juror Livingston was a definition or explanation of a reasonable doubt.   Great lawyers and learned judges flounder hopelessly whenever they undertake to define or explain this phrase. This court, with tireless iteration, continues to animadvert upon all attempts to define or explain it; certainly the practice should not be tolerated of propounding such a question to the simple and the unlearned.

If this question should be allowed, jurors will next be asked for their conception and understanding of the presumption of innocence, of malice aforethought, or justifiable self-defense, of the burden of proof in criminal cases, the competency and weight of dying declarations, of confessions as evidence, etc.,

and put through an examination as to the law of the case which none but the best lawyers could undergo with any credit.

Will not this court indulge the presumption that jurors, when found qualified, will heed the instructions of the court, as they make oath to do, and apply to the facts of the case the law as given them by the court, regardless of their own previous conceptions, or misconceptions, of the law? Is not this indispensable to the safety and purity of jury trials?

Nor did the court below err in refusing to permit appellant to ask juror Roan if he would believe witness Hoard on oath. If this question could be allowed, then each and every man presented as a juror could be asked as to the credit he would give to each and every witness, both for state and defense, in the case. The right of examination claimed would cause the crime being tried to be lost sight of and forgotten in the preliminary examination of jurors in all the subtleties and refinements of the law and in the trial of the credibility of witnesses. This would make our trials of crime mere travesties of justice. While adding nothing of any worth to the security and immunity of the innocent, it would make criminal trials more protracted and difficult, and the conviction of the guilty less certain.

If it be admitted that the court erred in modifying instructions twenty-six and twenty-eight for defendant, this cannot have prejudiced him on his trial before the jury. The instructions given for the state were few, simple, and incontestable. A great number of instructions, most skillfully drawn, and covering every phase of the defense, were given for appellant. Notwithstanding a possibly erroneous modification of two of them, the jury were furnished a sufficient guide for their proper determination of the case. The rule is correctly stated in *Mabry* v. *State,* 71 Miss., 722.

Instruction twenty-six as modified is a correct statement of the law, appellant's counsel themselves being the judges. Instruction twenty-five is much like twenty-six. In twenty-five the jury are told that if any fact or circumstance in the cause

is susceptible of two reasonable interpretations, one favorable and the other unfavorable, and the jury is in doubt as to which is the correct interpretation, they will resolve such doubt in favor of the defendant. This is correctly stated. Why should not the jury be instructed also in twenty-six to accept of two reasonable theories on the whole case, the one favorable to defendant, if in doubt which is correct? The charge as amended is almost identical with twenty-five. By it the jury are directed to find for defendant if there are two reasonable theories and the jury has any doubt which is correct. How could defendant have been injured by such a charge?

If it was error to erase the word "evidence" and write "presumption" in its stead in instruction twenty-eight, this was fully cured in the latter part of the instruction, which declared that "The presumption is an instrument of proof created by the law in favor of accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created."

Argued orally by *J. M. Boone,* for appellant, and by *W. M. Cox,* and *William Williams,* attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

There was no error in refusing to allow defendant to examine the juror Emmett Livingston on his *voir dire* as to his conception of a reasonable doubt. Jurors on their *voir dire* examination are not to be led into the tangled mazes of this metaphysical field.

Nor was there any error in refusing to allow the juror Roan to answer the question, on his *voir dire* examination, "whether he would believe witness Roscoe Hoard on oath." The court permitted the testimony of Roscoe Hoard to go to the jury over the objection of the defendant, but the next day, upon the request of the state, excluded the testimony. Counsel for state took this action so as not to have possible error in the record. Their reason seems to have been that, whilst Roscoe Hoard cor-

roborated in part the witness Jim Moreland as to the conversation had with defendant (which the reporter will set out in full), he did not corroborate him throughout; and, further, because they feared that it was barely possible that Hoard's testimony might fail of showing that Ran Cunningham, the deceased, was the specific person referred to by defendant. The record shows beyond dispute that Ran Cunningham was the specific person referred to, and it was not necessary to the competency of Hoard's testimony otherwise that he should throughout corroborate Moreland. The latter fact might have affected the credibility of the one or the other with the jury, but did not render the testimony incompetent. The only mistake made by the court below was in acceding to the request of the counsel for the state and excluding the testimony; but this was an error in favor of the defendant. It is obvious that, so far from prejudicing his case, the action of both the counsel for the state and the exceptionally able and accomplished trial judge was the result of extreme tenderness towards the defendant, and praiseworthy conscientiousness in seeking to secure to him every legal right.

The addition of the words "and the jury is in doubt which is the correct theory" to the twenty-sixth instruction asked by the defendant was not error. There being doubt as to the correct theory is submitted as the correct test by counsel for appellant in their twenty-fifth instruction, in which the jury are told that, if there "was any fact in the case susceptible of two reasonable interpretations, one favorable and the other unfavorable to the defendant, and the jury were in doubt which was the correct interpretation," etc.

It was erroneous in the court to change the first part of the twenty-eighth instruction asked for the defendant by striking out the word "evidence" and substituting therefor the word "presumption." But it was harmless error, for the latter clause of the instruction cures it. The jury could not have misunderstood the idea of the instruction as propounded originally.

None of the other errors assigned on the trial of the merits is tenable. We have carefully considered the case in all its phases, and find no error of any kind except the one just alluded to in respect to the twenty-eighth charge, and this was cured as stated.

*Affirmed.*