268 So.2d 620

**STATE of Louisiana**

**v.**

**Alvin JOHNSON.**

**No. 52550.**

Oct. 26, 1972.

Rehearing Denied Nov. 21, 1972.

Robert P. McLeod, Paul Henry Kidd, Monroe, for defendant-appellant.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty Gen., Hal R. Henderson, Dist. Atty., for plaintiff-appellee.

PER CURIAM.

By Bill of Information, the State charged Alvin Johnson with simple arson in violation of La.R.S. 14:51. After trial, the jury returned a verdict of guilty. The judge sentenced the defendant to a term of eight (8) years in the Louisiana State Penitentiary * and to pay a fine of four thousand dollars ($4,000).

The defendant has appealed, relying upon thirteen bills of exceptions reserved in the trial court. The first two bills raise the identical issues of whether or not the defendant's motions to quash the petit jury venire and for a change of venue were erroneously overruled as was presented and decided in State v. Curry, 262 La. 280, 263 So.2d 36 (1972). For the reasons there set forth, we find no error.

Though the prospective jurors are not the same as those excluded from service for their inability to read and write the English language in State v. Curry, 262 La. 616, 264 So.2d 583 (1972), the issues presented by bills of exceptions numbers

---

* The trial judge sentenced defendant to an additional 200 days, but gave him credit on the sentence for the 200 days in custody prior to trial.

three through five (3–5) are identical. For the reasons set forth in that decision, we find these bills of exceptions lack merit.

Bills of exceptions Nos. 6, 7 and 8 were taken by defense counsel to the trial court's rulings on the challenges for cause of three prospective jurors, Tommy J. Edwards, James W. Buckner, and John M. Bundy.

▮ Tommy J. Edwards was challenged for cause by virtue of "his peculiar knowledge" of the case. The trial judge asked, "I tell you, Mr. Edwards, that before you could vote to convict this man that the State must prove from witnesses sitting right there in that chair that this Country Club burned, that that is one of the things that the State must prove, would you require the State to prove it before you would vote to convict that man?", to which Mr. Edwards responded, "If they prove that it burned and they prove that he did it, he is guilty." The judge then asked, "All right. Now suppose they prove that he had something to do with a burning, but they don't prove that the Country Club burned? Suppose the State just doesn't prove that the Country Club burned, or suppose that they prove that it burned a little bit?", to which Mr. Edwards replied, "Somebody would have a problem on their hands because it looks like they would have to prove that." This ruling was correct.

▮ James W. Buckner was challenged when he testified he would be more apt to give "greater credibility" to police officer Lt. Sherrill's testimony than to other witnesses, even though he acknowledged that other witnesses would be under oath. When Mr. Buckner was asked by the trial judge, "Would you necessarily believe him (Lt. Sherrill) more than you might believe some other witnesses?", Buckner answered, "Like I said, sir, yes, sir, to a certain extent." The judge then asked, "Why?", to which Mr. Buckner responded, "I feel like to hold the position he holds he has to be honest and truthful about it." This ruling was correct.

▮ Mr. Bundy was challenged for cause by the defense counsel when he was asked if whether or not the State proved the defendant's guilt, the defendant would have to prove he was not guilty, giving the impression Mr. Bundy did not understand the law that a man is presumed innocent until he is proven guilty. Mr. Bundy disclosed, however, all the necessary qualifications for a sound and competent juror when further examined by the trial judge.

▮ This court has repeatedly held it is within the sound discretion of the trial judge to determine the competency of a juror and that only when the exercise of such discretion is arbitrary or unreasonable, to the prejudicial injury of the defendant in obtaining a fair and impartial trial,

that this Court would be warranted in setting aside a verdict. La.C.Cr.P. arts. 787, 789. See State v. Square, 357 La. 743, 244 So.2d 200 (1971). We find no abuse of discretion here. These bills are without merit.

■ Bill of exceptions No. 9 appears frivolous. Defense counsel alleged grounds for a mistrial arose when the trial judge allowed two witnesses to testify, albeit out of the presence of the jury, after the jury was sworn and the bill of information read but before the opening statements were made by the state as to the free and voluntary nature of a confession to be introduced. The defendant objected on the grounds that evidence was not to be taken until after the opening statement in accordance with the La.C.Cr.P. art. 765 (order of trial).

The whole examination transpired at a hearing for the trial judge to determine the admissability of an alleged confession and inculpatory statements. As the examination was made outside the hearing of the jury, we find no prejudice to the defendant. Neither do we find any other circumstances under which a mistrial should have been granted. La.C.Cr.P. art. 775.

La.C.Cr.P. art. 794 clearly states, " * * * The court may remove the jury from the courtroom at any time when considered in the best interest of justice."

■■ Bill of exceptions No. 10 alleges the State erroneously alluded to certain inculpatory statements made by the defendant without having given notices required. La.C.Cr.P. Art. 768. We find this contention to be without merit for two reasons. First, these out of court utterances were incidents of the criminal act and therefore form part of the res gestae admissible in evidence under the explicit provision of La.R.S. 15:448. State v. Rutledge, 259 La. 544, 250 So.2d 734 (1971). Second, the alleged inculpatory statement as contemplated by Art. 768, "refers to the out-of-court admission of incriminating facts made by a defendant *after the crime has been committed*. It relates to past events." State v. Fink, 255 La. 385, 231 So.2d 360 (1970).

■ Bill of Exceptions No. 11 alleges the trial judge erred when he ruled irrelevant a question propounded by defense counsel during cross examination of one of the state's witnesses. We find the trial judge did not abuse his discretion in ruling this question to be irrelevant. La.R.S. 15:441. The trial judge must be accorded a wide discretion to determine whether evidence sought to be introduced is relevant to the case. State v. Murphy, 234 La. 909, 102 So.2d 61, (1968); State v. Square, 257 La. 743, 244 So.2d 200 (1971).

■ Bills of exceptions Nos. 12 and 13 were taken when the trial judge subse-

quent to a hearing out of the jury's presence, ruled a confession had been proven freely and voluntarily given and therefore admissable into evidence, and when the trial judge allowed the confession and waiver of rights form to be offered in evidence. Upon reading the transcript concerning the confession and waiver of rights form, we find the trial judge did not abuse his discretion in ruling them admissable into evidence. The record affirmatively shows that the waiver of rights form and confession were free and voluntary, not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. These final two bills of exceptions lack merit.

For the reasons assigned, the conviction and sentence are affirmed.

SUMMERS, J., concurs.

BARHAM, J., dissents with written reasons.

DIXON, J., concurs in the result only as to bills 6, 7, and 8.

1. In State v. Hills, 241 La. 345, 129 So.2d 12 (1961), we recognized that there should be wide latitude in voir dire examination to provide an opportunity to discover any basis for exercising peremptory challenges as well as challenges for cause. Recognition of this practice was made by the Legislature with the adoption of the present Code of Criminal Procedure, and more particularly Article 786. That article provides that examination shall be within the discretion of the court, without placing any limitations to the scope.

BARHAM, Justice (dissenting).

I find merit in Bills of Exceptions Nos. 2, 7, and 8, and for these reasons I must dissent.

Bills of Exceptions Nos. 7 and 8 were reserved to the overruling of two challenges for cause of prospective jurors by defendant Alvin Johnson. He exhausted his peremptory challenges during the voir dire examination and is therefore entitled to present his complaints on the refusal of the trial court to excuse any prospective jurors for cause. Art. 800, C.Cr.P.

The well-recognized purposes of voir dire examination are to assure a fair trial by an impartial jury and to allow for discovery of any basis for exercising the constitutional right (Art. I, Sec. 10) to peremptory challenges. As a means to these ends our law gives the court, the State, and the defendant the right to examine under oath the prospective jurors with the scope of examination limited only by the exercise of the discretion of the trial judge. Art. 786.[1] The ground for challenge for cause by

Previously, under former R.S. 15:357 examination was expressly limited to ascertaining the qualifications of the jurors. While the guidelines for examination for exercise of peremptory challenges have not yet been tested before us, we have recently enforced the right of counsel to full use of voir dire examination to ascertain any partiality or inability to accept the law by a prospective juror. State v. Crittle, 263 La. 418, 268 So.2d 604, decided May 1, 1972.

the State or the defendant are provided in Article 797, with additional grounds for challenge by the State announced in Article 798. The grounds pertinent in this case are:

"Art. 797. Challenge for cause

"The state or the defendant may challenge a juror for cause on the ground that:

" *　*　*

"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

" *　*　*

"(4) The juror will not accept the law as given to him by the court; or

" *　*　*"

In Bill of Exceptions No. 7 the challenge was to James W. Buckner, who was accepted as a juror by the State and the defendant after defendant's failure to have him removed for cause. As pointed out by the majority opinion, this prospective juror testified that he would give greater weight to the testimony of Police Lt. Sherrill than to that of any other witness because "to hold the position he [Sherrill] holds he has

to be honest and truthful about it". He also said that he knew Lt. Sherrill and his family well, and that Sherrill had always been truthful with him. The majority finds no error in allowing Buckner to sit on this jury. I cannot agree. It is obvious that he had already decided that he would believe the testimony of Lt. Sherrill over that of any other witness. And even when the court questioned him, Buckner admitted he would believe Lt. Sherrill more than the other witnesses. It is noted from the testimony attached to other bills of exceptions that Lt. Sherrill's testimony was vital to the State's case. He testified on the arrest of the defendant and on the confession that defendant gave. In light of Buckner's statements on voir dire examination he must have believed the defendant was guilty as soon as Lt. Sherrill had testified and before the defendant had an opportunity to present his case. It therefore cannot be said that defendant had a fair and impartial jury.

The rejection of the challenge of John M. Bundy was the basis of Bill of Exceptions No. 8. After the trial court refused to remove him for cause, defendant peremptorily challenged Bundy. As the voir dire examination of this potential juror revealed, he believed that there was a burden on the defendant to prove that he was not guilty, although he said that he would apply the law as instructed by the judge at

the end of the trial, including the presumption of innocence. The following testimony, which came after Bundy said he would accept the instructions of the court and vote the defendant innocent if he was not satisfied of defendant's guilt beyond a reasonable doubt, is pertinent:

"BY MR. KIDD [attorney for defendant]:

"* * * Let us assume that after we get through and the jury is chosen, Mr. Henderson [district attorney] gets up and tells you about how this thing happened—

"A—OK.

"Q—and he says that this defendant is guilty, and then Mr. Henderson tells the Court 'we rest'. No witnesses are put on the stand.

"* * *

"A I couldn't go for that.

"Q What would you do?

"A I have got an idea I would need some evidence, of some kind.

"Q All right. Would you expect the defendant to go back to jail until he proved he is not guilty?

"A Well, he would be out on bond, I guess.

"Q But you wouldn't—you would just pretermit the matter; you wouldn't vote not guilty?

"A I don't believe I would. I don't believe I could. Either way.

"* * *

"WITNESS: If they prove that he is guilty to no shadow of a doubt, I would vote guilty.

"THE COURT: All right, and if they don't do that, what would you do?

"WITNESS: I would vote him innocent.

"THE COURT: All right. Now if the State doesn't introduce any evidence and the jury goes out here to deliberate, what has to be your verdict?

"WITNESS: It would be not guilty.

"THE COURT: Now do you understand that this is what was being asked you while ago? Do you understand that that was what Mr. Kidd was asking you while ago?

"WITNESS: Okay.

"THE COURT: All right.

"MR. KIDD: I would like to ask that question—following what the Court has said to you—I don't mean to confuse you, Mr. Bundy—What the Court has said to you, even though the State didn't offer you any evidence, you are not going to turn this man loose until he has presented some evidence that he is not guilty, are you?

"WITNESS: That's right. Shouldn't.

"THE COURT: How are you going to turn him loose? How are you not going to turn him loose if you deliberate in the case, Mr. Bundy?

"WITNESS: I don't know."

Bundy's responses show that he was of the opinion that this defendant was guilty, at least to some degree. Even though he said that he could apply the presumption of innocence and require the State to prove the defendant's guilt beyond a reasonable doubt, he admitted that he would not be able to vote for an acquittal unless there was evidence presented that showed that the defendant was not guilty. A challenge for cause under such circumstances was certainly justified. We have recognized such a conclusion in the past. See State v. McCoy, 109 La. 682, 33 So. 730 (1903); State v. Guillory, 146 La. 434, 83 So. 754 (1920); State v. Henry, 197 La. 999, 3 So.2d 104 (1941); State v. Oliphant, 220 La. 489, 56 So.2d 846 (1952). Only when a prospective juror who has an opinion about the guilt or innocence of the defendant is able to put that opinion aside and consider the merits of the case on the evidence adduced and upon the law as instructed by the trial court can he be accepted as a juror. Although this juror in general responses stated he would accept the law as given by the court, it is clear that he either could not understand and apply, or would not apply, the presumption of innocence.

Bill of Exceptions No. 2 was reserved to a denial of a motion for change of venue. The present prosecution of Alvin Johnson is one of several cases arising in a small community out of trouble between blacks and whites which erupted in acts of violence and destruction of property. The question of venue was presented in the trial of one of these defendants, and we held in that case, State v. Curry, 262 La. 280, 263 So.2d 36 (1972), that the accused had not established his right to a change of venue. The evidence in that case was made the basis for similar attacks upon venue in the other trials. We have followed that ruling in all of these other related cases. I must admit that in the Curry case I did not read the portions of the record pertinent to the ruling on the motion for change of venue. I have now read the Curry record on the hearing of that motion, which is made a part of the record in the present case, and I have additionally examined the testimony attached to the bills of exceptions in the present case taken on the actual voir dire examination. I am now convinced that this defendant could not have obtained a fair and impartial trial in the parish where he was convicted.[2]

---

2. See also my dissent in State v. Heard, 263 La. 484, 268 So.2d 628 this day decided.

Our rule for determination of change of venue is stated in Code of Criminal Procedure Article 622:

"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.

"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."

The difficulty of establishing the right to a change of venue under the express terminology of the last paragraph is immediately apparent: If the jurors on voir dire examination or the witnesses at the trial will be under such pressure, prejudice, or influence as to testify falsely, then there is every reason to believe that the same pressure and prejudice will influence the witnesses, drawn from the same community, who are called to state whether this pressure or prejudice will exist at the selection of the jury or upon the trial. It cannot be presumed that the witnesses on the preliminary motion for change of venue will be absolutely truthful, not testifying under pressure, when the whole community is being tested for that very determination. It is obvious from the testimony taken upon the hearing of the motion that some of the witnesses did lie, at least when they testified to knowing nothing about happenings which had to be common knowledge to everyone in the community and which indeed were to some extent common knowledge in the entire state. The testimony of these witnesses reveals their total unwillingness or inability to answer freely.

Moreover, we have discarded the old rule of State v. Scott, 237 La. 71, 110 So. 2d 530 (1959), which confused the grounds for change of venue with the grounds for challenge for cause. The redactors of our present Code article say that we have expanded the rule, and that the change of venue concept "is to be superimposed upon the entire proceeding". The Official Revision Comment continues: " * * * A change of venue ought to be available even though, individually, each juror is not susceptible to a valid challenge for cause, if the defendant can show that overriding all of these things and superimposed upon all of them he still cannot get a fair trial. The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly."

Prejudice in the community was further inflamed by an action of the chief prosecutor in the first of the cases, State v. Curry, supra, who was a member of the staff of the Attorney General appointed to that staff shortly before the trials of these defendants. A few weeks before the trial of Curry, he and three other persons caused to be published in a local newspaper an almost full-page ad with a picture of Willie Curry, one of the principal defendants in these cases, and with a text specifically intended to plant in the minds of those who read the advertisement that Willie Curry and all those associated with him (including the present defendant) were Communists.

The judge's comments in overruling the motion for change of venue in the Curry case are interesting:

*"I don't think that there is any question but what there has prejudice been shown in the matter.* There is prejudice certainly in this community; there is prejudice in every community, which is rather unfortunate.

"I think unfortunately for the defendants some of their primary witnesses have testified that they either didn't know or perhaps they could get a fair trial.

"Of course, this is a matter that addresses itself not only to the evidence which has been presented here, but the Court knows from its own knowledge that I have defended, in my practice of law, many black people. Frankly, I don't know why all of a sudden we always want black people on juries particularly. I never wanted one when I was defending a black person. I never had one convicted with a jury.

*"Now whether or not there has been enough public sentiment aroused in this community as to whether or not these men can get a fair trial or not, there is definitely a doubt in my mind.* I am sure that there is some public sentiment against them. But I believe that under all of the circumstances that these men can get a fair trial and I personally am going to do everything that I can to see that they get a fair trial. If a jury can not be picked from these thirty people who have been summonsed [sic], we will summons some more; we will summons as many as it takes to allow the State and the defendant to exhaust every challenge they have in order to get a jury that they think will give this defendant and all of the other defendants a fair trial.

"I trust that everybody will start having a little more confidence in each other in this community and in this Court. As I stated, I will assure you I, even though I am white, that I will do everything within my power to see that these men are given fair trials. I had rather somebody else try them, really, but unfortunately it is my time.

"I have no alternative in my opinion under the law but to overrule the motion for the change of venue." (Emphasis supplied.)

It is apparent to me that the trial court noted exactly what I have concluded: That the witnesses at the hearing on the motion for change of venue were so influenced by pressure and fear that they could not openly and truthfully answer the questions asked them.

My findings under Bills of Exceptions Nos. 7 and 8 do not accord with the trial judge's statement that he would make certain the 12 men chosen were fair and impartial, for at least one of them forced upon this defendant should have been excused for cause and another who should have been removed for cause was excluded only upon expenditure of one of defendant's peremptory challenges. A change of venue would be justified even under the old standard of State v. Scott, supra. Obviously, although the trial judge stated the codal rule, he applied the old standard considering grounds for challenge for cause rather than grounds for change of venue. I therefore am of the opinion that there was error of law as well as error in the evaluation of facts in determining the merits of the motion for change of venue.

For all the reasons assigned I respectfully dissent.