282 So.2d 422 (1973)
STATE of Louisiana
v.
Abe JONES, Jr.
No. 52286.
Supreme Court of Louisiana.
February 19, 1973.
Dissenting Opinion February 21, 1973.
On Rehearing August 20, 1973.
*423 Gravel, Roy & Burnes, James J. Brady, James M. Small, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Robert P. Jackson, Alfred B. Shapiro, Asst. Dist. Attys., for plaintiff-appellee.
SANDERS, Justice.
The Grand Jury of Rapides Parish indicted Abe Jones, Jr., for the murder of Roy L. Henderson. After hearing the evidence, the jury returned a verdict of guilty without capital punishment. The trial judge sentenced him to life imprisonment. The defendant has appealed, relying upon 24 bills of exceptions reserved in the trial court. The substantial questions pertain to the limitation of the voir dire examination of jurors, denial of a challenge for cause, and the procedure used for the summoning of tales jurors.
Bills of Exceptions 2 through 7 pertain to the rulings of the trial judge limiting defense counsel's voir dire examination of prospective jurors. Of these, Bills of Exceptions 6 and 7 relate to a juror who was later excused for cause. Since that juror did not serve, the rulings as to his examination were harmless. See LSA-C.Cr.P. Art. 921. Hence, these bills will not be discussed in detail.

BILLS OF EXCEPTIONS 2 and 3
As to prospective juror James H. Farmer, the line of questioning and ruling was as follows:
"QUESTION: I want you to suppose, Mr. Farmer, that Judge Gremillion advises you of the law and that part of the law is not to your liking. You have personal disagreement with it, could you nonetheless apply it?
"ANSWER: Yes.
"QUESTION: And you can say that without reservation, even not knowing what the law is at this point, is that correct?
"ANSWER: Yes.
"QUESTION: I take it then, if he gave you a completely obnoxious statement of the law, which you felt personally was wrong, notwithstanding that fact, you could apply it?
"ANSWER: Yes.
"QUESTION: I want to ask you again. Can you readily say yes to my question before you are advised of what the law is?
"BY MR. JACKSON: Objection.
"BY THE COURT: Sustained."
The examination and ruling as to prospective juror Charles Bonneau, Jr., were similar.
A review of the examination shows that these jurors had testified that they would apply the law as charged by the trial judge, whether they agreed with it or not. This testimony had been repeated several times, in response to defense questions in various forms. The final question, to which objection was sustained, was both argumentative and repetitious.
Article 786 of the Louisiana Code of Criminal Procedure provides that the scope of voir dire examination shall be in the discretion of the Court. In the absence of a clear abuse of that discretion, this Court will not disturb the ruling on appeal. State v. Schoonover, 252 La. 311, 211 So. 2d 273, cert. den. 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460 (1969); State v. Williams, 230 La. 1059, 89 So.2d 898 (1956).
*424 In our opinion, the trial judge did not abuse his discretion here.

BILL OF EXCEPTIONS NO. 4
The defendant reserved Bill of Exceptions No. 4 to the following ruling during the examination of prospective juror Rudolph White:
"QUESTION: Mr. White, at the conclusion of the State's and the defense's case, after all of the evidence is heard, Judge Gremillion is going to charge you with what the law is, and he is going to tell you to apply the law to the facts and to the evidence you heard. Now do you think you would be able to apply the law which the judge gives you, even assuming that you personally disagree with the law.
"ANSWER: I sure could.
"QUESTION: Even though you found it personally obnoxious, you could apply it as the Judge told you to apply it, sir?
"ANSWER: I believe in the law, whether I like it or not.
"QUESTION: Then I take it that you believe that Mr. Abe Jones at this point is innocent, is that correct?
"ANSWER: He is presumed innocent.
"QUESTION: Do you presume him to be innocent?
"ANSWER: Yes, sir.
"BY MR. JACKSON: Your Honor, we object to any further questions along this line.
"BY THE COURT: This is the type of question I spoke of earlier. You are in effect asking him to tell you what he knows about the law of innocence. That will not be permitted."
Although the ruling of the trial judge here occurred when there was no pending question, the ruling may be construed as barring further examination relating to the juror's understanding of and reaction to the various rules of law deemed applicable to the case.
We note that the juror had already testified that he would apply the law given to him by the trial judge, whether he agreed with it or not. Under these circumstances, the trial judge did not abuse his discretion in curtailing detailed examination concerning the various legal rules applicable to the case. See State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972) and the authorities therein cited.

BILL OF EXCEPTIONS NO. 5
The defendant reserved Bill of Exceptions No. 5 to the exclusion of the following defense question addressed to a juror:
"Mr. Juneau, do you believe that if a Grand Jury indicts someone, this man is guilty?"
For the reasons assigned in Bill of Exceptions No. 4, the trial judge did not abuse his discretion here.

BILLS OF EXCEPTIONS NOS. 9 and 10
The defendant reserved Bills of Exceptions Nos. 9 and 10 to the denial of a challenge for cause of Louis O. Edwards, a prospective juror. After the denial of the challenge for cause, the defendant excused the prospective juror with a peremptory challenge.
The rulings were as follows:
"Defense Counsel:
"Q. Mr. Edwards, getting back just for one minute, because of one thing or another, perhaps happened to you during your life, do you feel that if it came down to a policeman saying one thing and an ordinary citizen saying another. The two being in direct conflict, you would be inclained *425 to accept and believe the testimony of the policeman, is that correct.?
"A. I would.
"Defense Counsel: Your Honor, I submit the juror for cause.
"Q. My question to you is this, Mr. Edwards, would you weigh the credibility of each party and rule accordingly, or would you be inclined to accept the testimony of the policeman in the event of a direct conflict?
"A. I would be inclined to go along with the policeman because that in his job he is trainedI would think, to where if they did see a crime he would be more susceptible to get the facts right off hand because he's trained to do that. That's the way I believe, I would be inclined to go along with the policeman because he would seem like to me, just see the facts better than your or I would.
"Q. And by that you mean any fact which he would happen to witness?
"A. Well, any fact he would witness, I mean he would be more susceptible to see it just like it was than I would.
In his Per Curiam, the trial judge states:
"During the examination of prospective juryman, Louis O. Edwards, there was developed by defense counsel what appeared on the face of Edward's testimony that he would believe the policeman in preference to an ordinary citizen. The entire dialogue must be read at which time the only conclusion that logically can be reached is that Mr. Edwards told of the circumstances he would appraise the testimony of such police officer and such a citizen. The ultimate conclusion that can be drawn from his testimony is that he would weigh the testimony of both and with the knowledge that a police officer is trained to observe, be inclined to accord more weight because of that fact."
Only a few cases have dealt with this type of question on voir dire examination. These cases have differed as to the propriety of such questions. The United States Circuit Court of Appeal for the District of Columbia has held that it is reversible error to bar such a question where police testimony represents virtually the entire case for the prosecution. See Brown v. United States, 119 U.S.App.D.C. 203, 338 F.2d 543 (1964); Sellers v. United States, 106 U.S.App.D.C. 209, 271 F.2d 475 (1959). The First and Fifth Circuits have held that the trial courts did not abuse their discretion in disallowing such questions. See Gorin v. United States, 1st Cir., 313 F.2d 641 (1963), cert. den. 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052; United States v. Gassaway, 5th Cir., 456 F.2d 624 (1972); United States v. Jackson, 5th Cir., 448 F.2d 539 (1971).
The issue here is whether or not it was reversible error for the trial judge to deny the challenge for cause, after having allowed the questions and received the answers of the prospective juror.
On questions related to the impartiality of jurors, great weight must be given to the ruling of the trial judge, who sees and hears the prospective juror.
The juror further testified:
"Q Also, Mr. Edwards, during the course of this trial very likely the testimony is going to be, some testimony is going to be given by various members of the Police Department, do you think you would be inclined to give more weight or more credence to the testimony from a policeman merely by virtue of the *426 fact that he is a policeman than you would say to the testimony of an ordinary citizen?
"A Well, I would go along with either one of them, you know, policeman or ordinary citizen, I'd listen to it, you know and get the facts, that's all you can do.
"Q Would you be more inclined to believe the policeman because of the fact that he is a policeman?
"A I would be inclined to believe policemen, his testimony.
"Q And that's because merely you believe that policemen are more inclined to tell the truth than ordinary citizens?
"A Well, I think either one of them would tell the truth, as far as that goes, but a policeman it's more his job you know to get the truth and lots of times in cases well the policeman was there, you know and I believe in the law, I'll put it like that. I will just say that, I believe in the law."
We agree with the trial judge that the main thrust of the prospective juror's answers was that, in weighing the testimony, he would take into account a police officer's training in observing and reporting crime.
In the recent case of State v. Johnson, 263 La. 462, 268 So.2d 620 (1972), a similar question was presented. In affirming the conviction, we held that a denial of a challenge for cause was not reversible error. See also State v. Dyer, 154 La. 379, 97 So. 563 (1923).
We conclude that the bills of exceptions lack merit.

BILLS OF EXCEPTIONS NOS 18 and 19.
The next substantial question is raised by the overruling of defendant's "Motion For Mistrial and/or Continuance and For Other Relief."
The background of the motion is clearly set forth in the Per Curiam of the trial judge. The Motion for a Mistrial or Continuance is based on the manner in which the Court secured additional tales jurors. At a point in the selection of the jury when nine jurors had been selected, the venire panel was exhausted. In order to fully understand this Motion and the reasons for ruling, consideration must be given to the entire voir dire and what preceded that. In this Parish, the general venire box is made up from names drawn from the rolls of the Registrar of Voters. For a trial of this magnitude one hundred names are drawn from the general venire box. In this particular case, the one hundred original so called were rather quickly exhausted. The Court ordered fifty additional names drawn from the general venire box. These were also exhausted. The Court then ordered the Clerk of Court to prepare fifty additional summons and ordered the Sheriff to serve them on standers-by, that is, picked up on the streets. These were quickly exhausted.
The Court then ordered the Clerk of Court to issue thirty additional summons and ordered the Sheriff to contact by telephone and without discrimination as many of the business places in Alexandria and in the surrounding area as possible in order to have them send into Court people who could serve as jurymen. No discrimination was made and as the evidence indicates, this request was made to business establishments who employ Negroes as well as whites. As a result of this effort, the final three jurymen were chosen, these being Charles Fabian Vandersypen, L. E. Brunson and Harold Gauthier. One alternate was also chosen from this group.
Article 785(D) of the Louisiana Code of Criminal Procedure provides:
"In parishes other than Orleans, the judge may order the summoning of tales jurors from among the bystanders or *427 persons in or about the courthouse, in place of the drawing of tales'jurors."
Article 419 of the Louisiana Code of Criminal Procedure provides that a jury venire shall not be set aside unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant.
Defendant contends that the procedure used violates defendant's constitutional rights because it in no way assures that there will be a fair cross-section of the community, especially as to race.
The evidence establishes to our satisfaction that no discrimination, racial or otherwise, was practiced in the selection of the remaining members of the jury. The trial judge noted in his oral reasons overruling the motion that about half of the first group of talesmen were Negroes, the same race as defendant. Moreover, the showing is insufficient to establish fraud, great wrong, or irreparable injury.
In the case of State v. McGuire, 254 La. 560, 225 So.2d 215 (1969), a somewhat similar procedure was used to summon tales jurors. Affirming the conviction, we stated:
"In his per curiam to the instant bill the trial judge states that the sheriff's office complied with the orders of the court. From our review of the jurisprudence, we find that the venire will not be set aside in the absence of allegations of fraud, wrong, or injury in the drawing and summoning of jurors."
We have reviewed the remaining bills of exceptions. None of them raise a substantial legal question.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents and assigns reasons.
DIXON, J., dissents.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 5 was taken to the trial judge's exclusion of the following question addressed by defense counsel to a potential juror on voir dire examination: "Mr. Juneau, do you believe that if a Grand Jury indicts someone, this man is guilty?" This bill of exceptions has merit. See my dissents in State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972); State v. Crittle, 263 La. 418, 268 So.2d 604 (1972); State v. Bell, 263 La. 434, 268 So.2d 610 (1972); and State v. Taylor, La., 282 So.2d 491 decided January 15, 1973, now pending after the granting of a rehearing.
Under Bills of Exceptions Nos. 9 and 10 the defendant complains that he was entitled to challenge for cause a juror who stated that he would be more inclined to believe a police officer than other witnesses. In my opinion these bills of exceptions are good. See my dissent in State v. Johnson, 263 La. 462, 268 So.2d 620 (1972).

ON REHEARING
DIXON, Justice.
On rehearing the defendant urged three principal errors.

I.
Bills of Exceptions Numbers 4 and 5 complained of the curtailment of voir dire examination by the defendant. Bill of Exceptions Number 4 was taken when the court sustained an objection to a prospective juror about the presumption of innocence. Bill of Exceptions Number 5 arose from the following question addressed to a prospective juror and the subsequent instruction by the court:
"Mr. Juneau, do you believe that if a grand jury indicts someone this man is guilty?
"By the Court: That is improper, as I've said earlier. We are not going to quiz these people on their knowledge of the law. He comes in here. He's just as *428 innocent of experience with the law as your client is with guilt, and we are not going to permit you to ask him questions about this."
There is a recognized distinction between examining a juror on his knowledge of the law and examining a juror on his ability and willingness to apply a principle of law which has been explained to him. The difference was noted in 1902 in State v. Perioux, 107 La. 601, 31 So. 1016.[1]
Prior to the excluded question, the voir dire examination had disclosed that the prospective juror Juneau had previously served on a grand jury in Rapides Parish. He was asked if grand jury service would affect his ability to serve as a fair and impartial juror. After a few questions about whether Juneau was acquainted with certain police officers, he was asked the question concerning the possible implication of guilt that might flow from a grand jury indictment. In our original opinion, we held that the trial judge did not abuse his discretion in curtailing the voir dire examination, relying on State v. Sheppard, 263 La. 379, 268 So.2d 590. The State also relies on State v. Richey, 258 La. 1094, 249 So.2d 143.
In State v. Bell, 263 La. 434, 268 So.2d 610, we approved a similar curtailment of voir dire examination. On the same day this court handed down State v. Sheppard and State v. Bell, it rendered its opinion in State v. Crittle, 263 La. 418, 268 So.2d 604. In State v. Crittle, we reversed a conviction when the trial court refused to permit the defense to examine prospective jurors on the subject of the presumption of innocence, relying on State v. Hills, 241 La. 345, 129 So.2d 12.
Code of Criminal Procedure article 786 announces the right of the court, the State and the defendant to examine prospective jurors and purports to state the scope of the examination:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court.... "
On the surface, it might appear that article 786 intended to give the trial judge almost unlimited discretion to control the examination of prospective jurors. However, as indicated in the Official Revision Comment, the predecessor article (former R.S. 15:349) provided that examination of prospective jurors shall be conducted in the manner as now provided by existing laws. But there were no other existing statutes concerning the examination of prospective jurors in criminal cases. In 1925, in a reference to the absence of statutory directions for the selection of a jury, this court *429 said in State v. Roberson, 157 La. 974, 103 So. 283, 287:
"But we prefer to say that since it is not mandatory on the court to select a jury according to any prescribed form, it follows that a jury may be selected in any way that permits the accused to examine each juror touching his qualifications, and to exercise as to such juror his right to challenge for cause, or peremptorily, as the case may be."
In 1926, in State v. Guidry, 160 La. 655, 107 So. 479, this court reversed a conviction when the district judge, under a rule adopted by the district court, conducted the voir dire examination himself, and would not permit examination of the prospective jurors by the lawyers.
Paragraph (d) of the Official Revision Comments refers to State v. Hills, 241 La. 345, 129 So.2d 12, as if the doctrine of that case qualified the discretion which article 786 seemed to vest in the trial court. State v. Hills contained a full exposition of the scope of voir dire examination in Louisiana. There, a conviction was reversed on rehearing, one reversible error being the prejudicial curtailment of voir dire examination. The court said, at 129 So.2d 31:
"It is a general view as to voir dire examination that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective juror so that he may exercise intelligently and wisely his right of peremptory challengesince each party has the right to put questions to a juror not only to show that there exists proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered. It is by examination into the attitudes and inclinations of jurors before they are sworn to try a case that litigants are enabled to reject those persons, by use of peremptory challenges where necessary, who are deemed to be unlikely to approach a decision in a detached and objective manner. The Constitution itself (La.Const. of 1921, Art. 1, Sec. 10) guarantees to the accused the right to peremptorily challenge jurors, `the number of challenges to be fixed by law;' that number, in the trial of any crime for which the penalty is death or necessarily imprisonment at hard labor, is twelve (R.S. 15:354). The intelligent exercise of the right of rejection, by use of those twelve peremptory challenges, is the meat of the privilege, and can be substantially weakened by a restriction of questionsthe answers to which might be regarded as informative of a juror's attitude and therefore of vital importance to his defense. In State v. Henry, 196 La. 217, 198 So. 910, 915, this Court quoted with approval from 35 C.J. at pages 387, 405 and 406; "`* * * parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge, and * * * it is error for the court to exclude questions which are pertinent for either purpose. * * * The right of peremptory challenge is a substantial right, and its freest exercise should be permitted." * * *'"
The question before us, disapproved by the trial judge, was relevant, germane, and was not only a question on which the defendant might have based a peremptory challenge, but was also a question whose answer concerning the effect of a grand jury indictment might have indicated partiality and might have indicated the need for a challenge for cause.
*430 We therefore conclude that the discretion of the district court in limiting the scope of the examination of prospective jurors is limited by the jurisprudence of this State as it existed at the time of the adoption of the Code of Criminal Procedure of 1966. At that time, as noted in State v. Hills, counsel in criminal cases were allowed a wide latitude in voir dire examination, and "the scope of inquiry is best governed by a liberal discretion on the part of the court."
"The object of examining a juror on his voir dire is to ascertain the state of his mind, in order to find out whether he stands indifferent between the State and the prisoner. He is considered indifferent when he has no bias for or against the prisoner; when he has not formed or expressed an opinion as to the guilt or innocence of the prisoner, after having heard the narrative of the witnesses, and finally, when he entertains no conscientious scruples that would prevent him from carrying the law into effect.
"The object of the law is to select impartial jurors to try the issue between the State and the defendant, and to ascertain that impartiality considerable latitude is allowed both to the prosecution and to the defense in examinations on the voir dire." Marr, The Criminal Jurisprudence of Louisiana, 2d Ed., pp. 689-690, 691 (1923).
Bill of Exceptions Number 5 has merit. Insofar as State v. Richey, State v. Bell and State v. Sheppard are in conflict with the principles expressed herein, they are overruled.

II.
Bills of Exceptions Numbers 9 and 10 complain of the refusal of the district judge to excuse the prospective juror Edwards for cause.
Because it appeared that there would be a direct conflict in the testimony of the accused and a police officer, Edwards was questioned about the relative weight he would attach to the testimony of a policeman merely because he was a policeman. There was a lengthy examination, and the trial judge concluded that Edwards testified that he "would weigh the testimony of both and with the knowledge that a police officer is trained to observe, be inclined to accord more weight because of that fact." Because of the length of the interrogation, it will not be reproduced in its entirety. Nevertheless, excerpts from the questions and answers lead to the conclusion that the juror was not an impartial juror, and that the challenge for cause should have been sustained.
Some of the questions and answers follow:
"Q. Would you be more inclined to believe the policeman because of the fact that he is a policeman?
"A. I would be inclined to believe policemen, his testimony.
"Q. Suppose you have a direct conflict in the testimony, if you have a policeman saying one thing and you have an ordinary citizen, just a man off the streets, saying another thing, do you think you would be more inclined to believe the policeman because of the fact that he is a policeman?
"A. I believe I would."
Two pages farther along this question and answer were repeated, whereupon the defendant challenged the juror for cause, and the challenge was denied by the court.
In subsequent examination, Edwards was asked: "I'd like to know under what circumstances would you place the testimony of an ordinary citizen on an equal par with that of a police officer?" Edwards answered, "Well, it's like I said, I would go along with policemen." Edwards twice more repeated that he would believe the policeman when there was a disagreement *431 between an ordinary citizen and a policeman.
After further argument, the court suggested a manner of interrogating the prospective juror which suggested that Edwards might believe a policeman, whose testimony was in conflict with a layman, about a factual situation observed by both, because the policeman was trained to observe. Nevertheless, upon a question by the district attorney, Edwards reiterated, "In any fact I would go along with the policeman's testimony."
State v. Square, 257 La. 743, 244 So.2d 200, is inapplicable. State v. Johnson, 263 La. 462, 268 So.2d 620, is distinguishable. The prospective juror in the Johnson case knew the individual police officer and did not hold a conviction that would require him to accept the testimony of any policeman over that of an ordinary citizen.

III.
Finally, the defendant claims on application for rehearing that we erred in overruling Bills of Exceptions Numbers 18 and 19. These bills were taken when the defendant discovered on voir dire examination of a tales juror that the juror had not been summonsed "from among the bystanders or persons in or about the courthouse" as provided by article 785, subd. D of the Code of Criminal Procedure. The general venire box was composed of names drawn from the rolls of the registrar of voters. One hundred names were drawn from the general venire box. Perhaps half of these were not found, and the original hundred were soon exhausted. Fifty additional names were drawn from the general venire box and were exhausted. The court then ordered the sheriff to obtain thirty tales jurors from bystanders. These prospective jurors were quickly exhausted.
Then, according to the per curiam:
"The Court then ordered the Clerk of Court to issue thirty additional summons and Ordered the Sheriff to contact by telephone without discrimination as many of the business places in Alexandria and in the surrounding area as possible in order to have, them send into Court people who could serve as jurymen. No discrimination was made and as the evidence indicates, this request was made to business establishments who employ Negroes as well as whites. As a result of this effort, the final three jurymen were chosen, these being Charles Fabian Vandersypen, L. E. Brunson and Harold Gauthier. One alternate was also chosen from this group."
The method of summonsing was established at the trial of the defendant's motion for mistrial by the testimony of the sheriff and two deputies who participated in calling the business houses in Alexandria to obtain tales jurors. The defendant objected both to the overruling of his motion for a mistrial and to the refusal of the trial judge to allow him to summons the businessmen who had been telephoned by the sheriff's office. The defendant sought to determine whether there had been discrimination and whether the tales jurors thus obtained represented a cross section of the community. The defendant is black. There were no blacks in the last group of tales jurors who reported, although about half the tales jurors in the first group obtained from bystanders were black.
There were about fifteen persons in the second group of tales jurors obtained. The district judge found as a fact that, from the evidence adduced from the sheriff's office and the clerk of court, no effort was made to limit the tales jurors to whites, and no effort was made to obtain Negroes.
Except for the expressed wish of defense counsel to examine the employers who had been called by the sheriff to send employees who might be willing and able to serve as jurors, there is no indication in the record that any other evidence relative to either discrimination or the failure to obtain a cross section of the community might have been developed.
*432 The record is clear that neither the sheriff nor the clerk of court knew the identity of those who appeared to serve as tales jurors until they actually reported to the sheriff's office. At that time, their names were obtained and inserted in the instanter summons which had been prepared in blank by the clerk.
Of course it is possible for abuses in the selection of tales jurors to creep into the system which allows the judge to order the sheriff to summons talesmen from bystanders and from persons near the courthouse. But no abuse has been shown in this case, and there is no indication in the record that the defense might have uncovered an effort or a system to exclude Negroes from this jury, even if he had been allowed more time to summons and examine additional witnesses. The defendant does not complain that he was denied the time or the right to investigate to determine if there actually existed any additional relevant evidence. In oral argument defense counsel stated ". . . we have simply requested that we be granted time to take additional testimony to see what businesses were called, how the person spoken to by the deputy sheriff chose the persons that were sent up here at the request of their employers to serve as prospective jurors in this matter, how this was determined. we would take evidence to see what percentage of black or Negro persons were employed or available in these particular establishments, also as to what class we are talking about that was called, we know it was the Alexandria area."
The deputies testified that all the businesses in the area had been called. They were cross-examined by the defendant, and all the information that the deputies had as to the identity of the persons they called was available to the defense at the time these witnesses testified. In addition, defense counsel had before him each tales juror whose name was drawn to serve on the jury. On voir dire examination he had the right to make relevant inquiry into the manner of selection of each juror.
A reasonable latitude in voir dire examination will adequately protect the defendant, and enable him to obtain a fair and impartial jury from a cross section of the community.
Selecting tales jurors from bystanders is an emergency measure, seldom used except near the end of jury selection, and then only to prevent delays incumbent upon filling an exhausted venire box and serving jurors who may be found at a point in the district many miles from the courthouse. The mere fact that there were no Negroes in the last group of fifteen tales jurors summonsed does not establish either discrimination or the absence of a cross section of the community on the venire.
For the reasons expressed in sections I. and II. of this opinion, the conviction and sentence are reversed, and the case is remanded for a new trial.
SANDERS, C. J., dissents with written reasons.
SUMMERS and MARCUS, JJ., dissent.
SANDERS, Chief Justice (dissenting).
The selection of a jury in the present case required four days, during which sixty persons were examined as prospective jurors. As I read the voir dire examination, it was fairly designed to constitute an impartial jury.
The majority reverses the conviction because of the exclusion of one question addressed to prospective Juror Juneau, who was later excused by the defense and did not serve at the trial.
In response to defense questions, Juneau testified that he would follow the trial judge's instructions as to the law to be later given to the jury whether he agreed *433 with the law or not; that he had once about five years before, served on the Grand Jury; and that his prior Grand Jury service would not prevent him from being a fair and impartial juror.
The trial judge later excluded the following question on which the reversal is based: "Do you believe that if a Grand Jury indicts someone, this man is guilty?"
In my opinion, the trial judge did not abuse his discretion in ruling out the question. As the trial judge notes in his Per Curiam, the question addressed to a prospective juror, not yet instructed as to the legal effect of an indictment, is a "loaded question," leading in most instances to a "guess" as to what he thinks the law is.
In order to reverse, the majority expressly overrules three relatively recent decisions of this Court dealing with voir dire examination of jurors: State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972); State v. Bell, 263 La. 434, 268 So. 2d 610 (1972).
The disposition also seems to conflict with several earlier cases in which the trial judge refused to allow similar questions addressed to a juror, especially State v. Oliver, 247 La. 729, 174 So.2d 509 (1965) cert. den., 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965) (question as to whether juror would feel the defendant guilty because he was charged) and State v. Webb, 156 La. 952, 101 So. 338 (1924) (question as to whether juror believed in the right of selfdefense:
In State v. Webb, supra, this Court stated:
". . . It is not permissible for counsel to question jurors as to their individual opinion or belief as to what the law is or ought to be in a given case or under certain circumstances. It is true that the Constitution declares that jurors are the judges of both the law and the facts in a criminal case on the question of the guilt or innocence of the accused party, but this is true with respect to the law only in the sense that they are to accept the law as given to them in the charge by the court and apply it to the facts of the particular case."
In State v. Sheppard, supra, the state of the law governing voir dire examination was summarized as follows:
"Although the authorities are divided, the prevailing view in this country is that examination of jurors as to their knowledge of or reaction to particular phases of the law to be given by the court is impermissible. People v. Modell, 143 Cal.App.2d 724, 300 P.2d 204 (1956); State v. Bolle, Mo., 201 S.W.2d 158 (1947); State v. Mosier, Mo., 102 S.W. 2d 620 (1937); Commonwealth v. Calhoun, 238 Pa. 474, 86 A. 472 (1913); Fugitt v. State, 85 Miss. 86, 37 So. 557 (1904); Duffy v. Carroll, 137 Conn. 51, 75 A.2d 33 (1950); Harrell v. Commonwealth, Ky., 328 S.W.2d 531 (1959); 50 C.J.S. Juries § 275, p. 1043; Annot., 99 A.L.R.2d 7, 20-23; The State Trial Judge's Book (National Conference of State Trial Judges and the Joint Committee for the Effective Administration of Justice ed. 1965) p. 93; Kennelly and Chapman, The Lawyer's Guide p. 168 (1970)."
I see no reason to retreat from this view, especially when current judicial reform is moving in the direction of expediting voir dire examination as a means of reducing court delays. The ruling was well within the discretion accorded to the trial judge.
For the reasons assigned, I respectfully dissent, adhering fully to the views expressed on original hearing.
NOTES
[1] "It is objectionable for the defense to ask of jurors, sworn on their voir dire, questions like the following:'In a criminal prosecution, as a juror, sworn to try a case and when forming your verdict, to whom would you give the benefit of the doubtthe state or the accused?' `If accepted on this jury, would you give the benefit of any doubt created in your mind by the evidence to the accused and acquit him?' `Would that doubt have to be a very great one, or a reasonable one?' The law requires the trial judge, at the end of the trial, to charge the jury that if a reasonable doubt find lodgment in their minds as to the guilt of the accused, they must give the latter the benefit of the same and acquit, and it is not to be supposed, in advance, that the jury will decline to heed the charge so to be given, or that a juror will refuse to be instructed by the court. In order to test the animus of a juror towards an accused person, it might, perhaps, be permissible for counsel for the defense, first explaining, or having the judge explain, the meaning of `reasonable doubt,' its application to the case, and his duty to acquit in case of the existence of such doubt as to guilt, to ask the juror whether he would give the accused the benefit of such doubt should it arise in his mind. But to permit him, without explanation of the meaning of `reasonable doubt,' and without instruction as to his duty as a juror in respect to the same, to be asked the questions, or any one of them, noted above, would be improper, as tending to confuse and embarrass."