283 So.2d 463 (1973)
STATE of Louisiana
v.
Willie DRUMGO, Jr. and Joe Curtis, Jr.
No. 53373.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
*464 Gist, Methvin & Trimble, James T. Trimble, Jr., Alexandria, for defendant-appellants.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Robert P. Jackson, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant-appellants were jointly tried and convicted of attempted armed robbery. LSA-R.S. 14:64. Each was sentenced to serve twenty-five (25) years imprisonment at hard labor. Defendants have perfected this appeal from their convictions and sentences relying upon eight bills of exceptions to obtain reversals.
On October 15, 1972, Mr. Joe Hilton, Sr. was at his drugstore in Alexandria, Louisiana. Just prior to closing time, two young Negro males entered his store. One of them was armed with a pistol. The men attempted to rob Mr. Hilton and when he refused to cooperate he was shot by the man with the pistol. Both assailants then fled the scene. Mrs. Hilton was present in the store at the time of the attempted robbery and shooting.
The following day the appellants herein were arrested. They were placed in line-ups without benefit of counsel. Mrs. Hilton identified the two appellants as being the perpetrators of the crime. Mr. Hilton did not view the line-ups as he was still hospitalized from his gunshot wound. Mr. Hilton did view photographs at the hospital from which he identified the appellants herein. Upon his release from the hospital about a month later he attended a line-up at which time he identified both appellants. No indictment or information had been filed against the appellants prior to the time of either line-up.
Bill of Exceptions No. 1
Bill of Exceptions No. 1 was reserved to the ruling of the trial judge denying defendant-appellants' motion to suppress identification testimony obtained through the two line-ups. The truth of the allegations of fact contained in the Motion to Suppress was stipulated by counsel for the State and the defendants. The only significant allegation contained in the Motion to Suppress was that the defendants were submitted to line-ups without benefit of counsel and were identified as the result of these line-ups. No allegation is made that the line-ups were conducted in an unnecessarily suggestive manner or that the identifications resulting therefrom are unreliable.[1]
*465 The State, relying upon the recent decision of the United States Supreme Court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) and the application of that decision by this Court in State v. St. Andre, 263 La. 48, 267 So.2d 190 (1972) argues that the two accused had no right to have counsel present since these line-ups were conducted prior to the filing of a Bill of Information against them.
In Kirby v. Illinois, the United States Supreme Court declined to extend the Wade-Gilbert[2] per se exclusionary rule to preindictment confrontations in which the accused was not afforded the right to counsel. The court declined "to import into routine police investigations an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings." 92 S.Ct. 1877, 1882 et seq.
The Supreme Court in Kirby was very specific in holding that their opinion was not to be construed as condoning abuses in an identification procedure by the police. The court said:
"What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. As the court pointed out in Wade itself, it is always necessary to `scrutinize any pretrial confrontation * * *' 388 U.S. at 227, 87 S.Ct. at 1932. The due process clause of the Fifth and Fourteenth Amendments forbids a line-up that is unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402."
In the case at bar, defendant-appellants make no allegations in their Motion to Suppress that unnecessarily suggestive procedures were employed by the police in the course of the line-ups. The trial judge was therefore correct in denying defendants' Motion to Suppress.
Bill of Exceptions No. 1 is without merit.
Bill of Exceptions No. 2
Bill of Exceptions No. 2 was reserved during the voir dire examination of a prospective juror. The Assistant District Attorney after reading the armed robbery statute (excluding the penalty provision) to the prospective juror asked him if he had any objections to the statute. Defense counsel objected to this question on the ground that the Assistant District Attorney had not read the penalty provision of the statute and had, thereby, prevented the prospective juror from voicing his objection to that portion of the statute. The trial judge overruled defense counsel and a bill of exceptions was reserved to this ruling.
The imposition of sentence or determination of the appropriate penalty in non-capital cases is a function vested exclusively in the trial judge and not in the jury. Thus, it is not mandatory that the *466 jury be informed of the penalty provision of a criminal statute. We find no prejudicial error in the ruling of the trial judge allowing the Assistant District Attorney to ask of a prospective juror whether he had any objections to the armed robbery statute when the juror was not aware of the penalty provision therein. It must be added however, that since the issue is not before us, we make no ruling on whether defense counsel himself could have advised the prospective juror of the penalty for armed robbery during the course of voir dire examination. This bill of exception is without merit.
Bill of Exceptions No. 3
This bill was also reserved during the voir dire examination. A prospective juror was asked: "Would it be better in your opinion for a crime to go unsolved than for an innocent man to be convicted of a crime he did not commit?" The state objected to the question, and the trial judge sustained the objection. Defense counsel reserved Bill of Exceptions No. 3 to the ruling of the trial court.
The state, in its brief before this Court, and the trial judge, in his per curiam to this bill of exceptions, note that the defendants failed to exhaust their peremptory challenges. They claim this bars consideration of the merits of this bill of exceptions. LSA-C.Cr.P. Art. 800 provides in part as follows:
"A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel...."
This rule does not preclude our examination of all errors alleged to have been committed during the voir dire examination merely because the defense has not exhausted its peremptory challenges. Where, as here, it is alleged that the trial court erred in refusing to allow defense counsel to ask a specific question or line of questions to the prospective jurors, the failure to exhaust all peremptory challenges is of no consequence. Thus, we will consider the merits of the defendant's bill of exceptions.
LSA-C.Cr.P. Art. 786 provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case." [Emphasis added].
We have interpreted this article to mean that the extent of the voir dire examination is within the sound discretion of the trial judge, and his rulings thereon will be sustained on appeal unless unwisely exercised, provided that there is considerable latitude allowed in the examination of the prospective jurors. State v. Coleman, 260 La. 897, 257 So.2d 652 (1972); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).
The question in this case was designed, according to defense counsel, "to determine of prospective jurors their general feelings regarding the enforcement of criminal law." The state, on the other hand, contends that the question calls upon the prospective juror "to speculate and give opinions on issues that were not involved in the trial." We do not find the question to be objectionable. Certainly if a prospective juror would rather see an innocent man convicted than a crime go "unsolved" he is subject to challenge for cause by the defense. LSA-C.Cr.P. Art. 797(2). To this extent, the question is similar to asking, "Will you return a verdict based exclusively on the law as given you by the trial judge and the evidence established during this trial." However, we do not feel that the refusal to allow this question *467 to be asked of the prospective jurors in this case is reversible error. Our review of the record of the voir dire examination of the prospective juror confirms that both defense counsel were given wide latitude in their voir dire examination.
Furthermore, we note that the trial judge in his per curiam to this bill of exceptions stated, "This Court sustained this objection because the Court had given preliminary instructions on the duties of a juror at the beginning of the trial and all jurors had signified to the Court [that] they would accept the law as given to them by the Court, hear the evidence, take the law given by the Court and reach a fair verdict..." This was essentially the issue raised by defense counsel's line of questioning. Therefore, we find this bill to be without merit.
Bill of Exceptions No. 4
This bill was reserved when the prosecutor asked a state witness to describe the condition of Mr. Hilton when the witness arrived at the store a few minutes after the crime. Defense counsel objected, alleging that the question was irrelevant and was designed to inflame the jury. The trial judge overruled the objection and defense counsel reserved this Bill of Exceptions.
The defendants were charged with the crime of attempted armed robbery. An essential element of that crime is the perpetrators' use of a dangerous weapon. The fact that the victim was found shot immediately after the incident is therefore relevant to show that a dangerous weapon had been employed. Thus, the objection of lack of relevance was properly overruled.
The second allegation of this bill is that the purpose of the question was to elicit highly inflammatory testimony. The response of the witness to the question is not included in the excerpt from the trial transcript attached to this bill of exceptions. We may surmise, however, that the anticipated answer was that the victim, Mr. Hilton, was bleeding from a gunshot wound. In weighing the probative value of the testimony sought to be elicited against the potential prejudice to the defendants, we find that the probative value far outweighs the potential for prejudice. The answer to the question was designed to establish an essential element of the state's case. Additionally, we find that a mere recital that the victim had been shot is not unduly prejudicial. The trial judge was therefore correct in overruling defense counsel's objection. The bill of exceptions has no merit.
Bills of Exceptions Nos. 5 and 6
Bill of Exceptions No. 5 was reserved during the testimony of Officer Howard P. Cannon as a witness for the defense. Officer Cannon was testifying in connection with the line-up at which the appellant, Willie Drumgo, was identified by Mrs. Hilton. Officer Cannon testified that three people other than Mrs. Hilton viewed the line-up namely, Jack Jenkins, Charlie Carr and Johnnie Andrews. Officer Cannon stated that these individuals were witnesses and/or victims of two armed robberies which occurred prior to the commission of the charged crime in the instant case, and they were present at the line-up to attempt to identify the perpetrator(s) of the previous crimes. Defense counsel then asked Officer Cannon if Mr. Jenkins made an identification and the officer responded that Mr. Jenkins had not identified anyone. Defense counsel then asked the following questions:
"Q. All right, now who was the next one?
A. Mr. Carr, and he indicated the same.
Q. Now, what robbery was that, the Jenkins robbery?"
The Assistant District Attorney objected on the ground that the line of questioning was irrelevant and immaterial. The trial *468 judge sustained the objection. The jury was then retired and argument was made by the state and defense counsel.
The theory of defense counsel's case is that there were two negros who had descriptions similar to those of the defendants and who were committing together, in the general area, numerous armed robberies one of which was the crime charged in the instant case, with at least one other being the armed robbery witnessed by Carr. Defense counsel argued that it was relevant to prove that Carr did not recognize the defendants at the line-ups,[3] thus tending to prove that they did not commit the crime witnessed by Carr. We surmise also that if the trial judge had allowed, defense counsel might have proved that the descriptions given by the victims in both the Jenkins robbery and the charged crime were similar (indicating that the robbers were possibly the same in both crimes), thereby suggesting that Mrs. Hilton's identification of the defendant was mistaken, since Carr did not (unlike Mrs. Hilton) identify either of them at the line-ups.
Pretermitting the issue of relevancy, we find that the response which defense counsel sought to elicit would have been predicated upon hearsay and thus not admissible. Specifically, defense counsel asked whether Mr. Carr was a witness to the "Jenkins armed robbery". The only means by which the officer would have had this knowledge is through out of court statements made by Mr. Carr, Mr. Jenkins, or some other individual. Since these out of court statements would have been offered into evidence (through the testimony of the officer acknowledging that Carr was a witness to the Jenkins robbery) to prove the truth of the matter asserted therein, they would have constituted inadmissible hearsay, and the trial court was correct in refusing to allow defense counsel to ask the question. See McCormick, Evidence, Sec. 225 (1964).
Bill of Exceptions No. 6 was reserved during the defense counsel's direct examination of Officer Daren E. Coutee. Defense counsel asked of the witness whether subsequent to the date of the charged crime he had, in his official capacity as a city detective, received complaints by persons who were victims of armed robberies who described the robbers as a tall black man and a light colored black man. The state objected to this question on the ground that the answer sought was irrelevant and was inadmissible as hearsay. The trial court sustained the objection and his per curiam explained his reason for the ruling. While he specifically held only that the answer sought was irrelevant and immaterial he implied without stating that it was also hearsay.
The question asked by defense counsel would have required the officer to give hearsay testimony, that is, to testify as to out of court assertions made to him by individuals who were not called as witnesses. Presumably, defense counsel was attempting to establish that after the defendants were jailed a number of complaints had been received relative to armed robberies committed by two negros, and the victims had given descriptions of the perpetrators which were similar to that of the defendants.
Assuming that it could have been shown that the perpetrators of the charged crime and these subsequent crimes were the same, this would have proved that the defendants were not guilty of the charged crime. However, he cannot establish these facts through the testimony of the officer, as the assertions which would be made therein would be based upon hearsay.
*469 It may be argued that due to the circumstances of this case, the testimony should have been admitted despite the hearsay rule. Defense counsel was attempting to elicit testimony that, subsequent to the defendants' incarceration other armed robberies were committed by two people whose descriptions were similar to that of the defendants. He may have also sought to discover the names of the victims of these subsequent crimes in order to call them as witnesses. Although defense counsel may have been without information as to the identities of these purported victims, and although the out of court assertions by the armed robbery victims recited by the officer might seem trustworthy, the record before us is not sufficient to establish prejudicial error. The only evidence attached to the bill of exception is the single question asked by the defense.
Perhaps in different circumstances (where fairness and reason dictate) we would not find strict adherence to the hearsay rule required. However, in the instant case we do not find that the trial court abused its discretion in excluding the hearsay testimony sought by defense counsel. This bill of exceptions is without merit.
Bill of Exceptions No. 7
In his per curiam to this bill the trial judge sets forth the facts as follows:
"This bill was reserved during the defense of Joe Curtis, which defense was based upon alibi. Doris Curtis, a sister of Joe Curtis, was testifying. The District Attorney on cross-examination probed her as to time and circumstances and her memory of the activities of the Sunday in question, which was the date of the attempted armed robbery. On redirect examination defense counsel sought to buttress the testimony of this witness by asking her if the investigating officer asked her what time she got up on Sunday, the day of the crime, or Monday, the day after the crime. * * *"
The facts are set forth from the trial judge's per curiam because defense counsel did not incorporate into his bill of exceptions all of the relevant testimony of this witness. Only a few questions before the objection are incorporated. We are, therefore, unable to determine what questions were asked of the witness on direct or cross examination except from this recital.
Defense counsel, in his brief, suggests that the credibility of the witness was attacked on cross examination by the District Attorney through the expedient of asking her questions about the events of Monday, the day following the crime. He contends that the Assistant District Attorney attempted to show that the witness's memory of the events transpiring on Monday was hazy; whereas her memory of the events occurring on Sunday, the day of the crime, was very detailed. This, presumably, would give rise to an inference that her testimony establishing defendant Curtis' alibi for Sunday was not credible.
Defense counsel states in brief that when the District Attorney objected he was trying to show that the witness was more familiar with the events of Sunday, the day of the crime, because she was questioned at length about her activities on Sunday by investigating police officers, whereas she was not questioned about the events on Monday. His position is that this questioning by police had the effect of refreshing her memory about the events on Sunday, whereas there was nothing to refresh her memory of the events on Monday. Thus, defense counsel states, he was trying to rehabilitate his witness. However, there is not sufficient testimony annexed to Bill of Exceptions No. 7 to allow us to reach a similar conclusion. Since the record before us does not indicate that the witness was discredited by her inability to *470 relate the events of Monday, we cannot reach the conclusion that the ruling of the trial judge prevented the rehabilitation of the witness. On the facts before us, the ruling of the trial judge must be sustained. This bill of exceptions is without merit.
Bill of Exceptions No. 8
During the rebuttal argument of the state, the Assistant District Attorney made a reference to the fact that one of the defense counsel was acquainted with the wife of a witness who had testified at the trial. The defense counsel objected to this reference and offered to testify that he did not know the person to whom the Assistant District Attorney had referred. The trial court overruled the objection and this bill of exceptions was reserved.[4]
Although it was improper and outside of the record the remark by the Assistant District Attorney could not have unduly influenced the jury. He merely stated: "Mr. Gravel [defense counsel] knows Hyacinthe down in the Sheriff's office". Defense counsel has not demonstrated to this court in what manner the defendant was prejudiced by this remark, or could have been prejudiced. Furthermore, immediately subsequent to the District Attorney's remark, the trial judge admonished the jury that the arguments of counsel are not part of the evidence or testimony. Therefore, we conclude that this bill of exceptions is without merit.
For the reasons assigned, the convictions and sentences are hereby affirmed.
SANDERS, C. J., concurs in the decree.
MARCUS, J., concurs.
TATE, J., concurs in the result.
NOTES
[1] The Motion to Suppress alleges: "(1) Defendants are citizens and residents of the United States of America and of the State of Louisiana; (2) Defendants were arrested for the offenses of attempted armed robbery and attempted murder on October 16, 1972; (3) The offenses of attempted armed robbery and attempted murder are bondable. At the time of the arrest defendants were indigent and were unable to secure sufficient funds in order to be released with bond; (4) Some time after arrest defendants were submitted to a line-up without counsel prior to the appointment of counsel and may have allegedly been identified by persons unknown to defendants or defendants' counsel; (5) In view of the foregoing, defendants move to suppress all testimony and all line-ups and/or out of court identifications of defendants; defendants further move to suppress any testimony as to the identify of the defendants by any person who may have participated in the identification procedure of the line-up."
[2] United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
[3] Although there is no express support in the record, it seems that there were two line-ups at which Mrs. Hilton made identifications. One in which she identified Drumgo and the other, Curtis. We surmise from defense counsel's contentions, that Carr was present at both line-ups and failed to identify either defendant as one of the perpetrators of the "Jenkins robbery".
[4] In brief, defense counsel attempts to expand this Bill of Exception to include an objection to a remark made by the trial court (the judge threatened to hold counsel in contempt). We note that defense counsel did not object to the trial court's remark, ask for an admonition to the jury, request a mistrial, or reserve a bill of exceptions thereto therefore, this matter is not before us.