329 So.2d 193 (1975)
STATE of Louisiana, Appellee,
v.
Arthur J. MONROE, Jr., Appellant.
No. 56419.
Supreme Court of Louisiana.
November 3, 1975.
Dissenting Opinion November 24, 1975.
On Rehearing March 29, 1976.
*194 Wilfret R. McKee, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
*195 TATE, Justice.
The defendant Monroe was convicted of armed robbery, La.R.S. 14:64, and sentenced to twenty years at hard labor.
Reversible error is presented by bills of exception numbers one and two. They relate to a substantial curtailment of voir dire examination of prospective jurors by the defense. As will be noted, voir dire examination is an important trial right given to both the state and the defendant to aid them in securing an impartial trial jury and to uncover predispositions or attitudes of prospective jurors which might serve as the basis for causal or peremptory challenge.

Context Facts
The trial court's rulings foreclosed lines of inquiry concerning the prospective jurors' attitudes toward the presumption of innocence, to which those accused of crime are entitled before our courts. The rulings were especially prejudicial in the light of the context facts of this prosecution.
The robbery occurred in the early afternoon. The victim, a route salesman, was robbed at gunpoint of his wallet and eight dollars or so in change. He did not see the face of the robber, nor could he ever identify him. He did, however, note that the robber was wearing a red, white, and blue plaid shirt and so reported to the police shortly after the robbery.
In roving the neighborhood about thirty minutes later, a police officer saw the defendant Monroe, wearing a shirt similar to the one described by the victim. Monroe was standing on the sidewalk, three blocks from the robbery, in conversation with another man. The officer approached Monroe, grasping his revolver, to interrogate him. He saw an expression of shock and surprise on the face of Monroe, who started to walk away. When the officer ordered Monroe to stop, the defendant commenced running away.
Within a minute or so, under continuous observation of the police, Monroe was stopped. He had a pistol and one dollar and ninety cents in change. The wallet and amount of change stolen in the robbery were never located, nor did the officers see the suspect drop them during the chase, nor did immediate examination of his path locate them.
The defendant Monroe took the stand. He stated he was talking to a friend on the street, about a block from his own home, on his way to his employment. On his person was some marijuana and a pistol (which he carried, he said, to protect himself because of a quarrel over a girlfriend). Because of this illegal possession, he said, he ran when he thought the police officer was going to search him. Other uncontradicted evidence produced by Monroe showed that he had never been arrested before and was of quiet, law-abiding good character.
The defense thus raised was that, although the state undoubtedly proved a robbery beyond a reasonable doubt, the accused himself was a suspect simply because he wore a shirt similar to one worn by the robber. (In fairness to the state, it also relied upon a fingerprint taken from the truck which matched that of the left index finger of the defendant.)

The Issue
The defense counsel had first asked the prospective jurors if they could acquit the defendant if the state failed to prove its case against him beyond a reasonable doubt. After receiving their affirmative responses, the defendant attempted to explore more concretely the juror's understanding of this general principle. Sua sponte, the trial court curtailed further voir dire examination along the lines of inquiry raised by the following two questions:
"Does it present any problems to you or do you have difficulty in accepting the fact *196 that it is better to see a crime go unpunished than to find the wrong man guilty. Can you accept that?" (Bill of Exception No. 1.)
"If the State should fail to prove who did in fact commit the crime and you are satisfied that we didn't, could you find him not guilty?" (Bill of Exception No. 2.)
The record does not indicate that any further voir dire examination was permitted on the issue.
The trial court disallowed the first question as argumentative and the second as repetitious. (The latter reasoning was solely because the defense had already secured juror assent to the general principle that they must acquit if the state failed to prove the defendant's guilt beyond a reasonable doubt.)
In State v. Drumgo, 283 So.2d 463 (La.1973), decided some time prior to the present trial, in accordance with long-established jurisprudence we held that this type of questioning was proper to explore the jurors' attitudes towards the presumption of innocence to which the accused is entitled, La.C.Cr.P. art. 804(A).[1] The purpose would be to establish the basis if any for exercise of a challenge for cause, La.C.Cr.P. art. 797(2) (as well as, of course, for an intelligent exercise of peremptory challenges, La.C.Cr.P. art. 799).
In Drumgo, although we recognized the error, we held it harmless, partly because, there, our examination of the entire voir dire examination indicated that in fact defense counsel was afforded wide latitude in his voir dire examination. Here, however, neither the record nor the trial court's per curiam indicate other than that the questions were disallowed as repetitious or argumentative probing of the veniremen's assent that they understood the generally expressed general principle that an accused must be acquitted if the state failed to prove its case beyond a reasonable doubt.
Thus, we are not, here, faced with a situation where the questions were truly repetitious nor where wide latitude or voir dire examination had in fact afforded the accused a reasonable opportunity to uncover predispositions or misunderstandings of the veniremen which might militate against their impartial service as jurors or might afford a reasonable basis by which the defendant might exercise his constitutional right to challenge jurors peremptorily, see La.Constitution of 1921, Art. I, Section 10 and Louisiana Constitution of 1974, Art. I, Section 17. The foreclosing of the lines of inquiry effectively denied the accused the voir dire right of ascertaining the prospective jurors' understanding of an attitude toward the presumption of innocence, as disclosed by minimal but specific questioning as to its application *197 including not only that the state prove that an armed robbery had occurred beyond a reasonable doubt, but also that the accused himself beyond a reasonable doubt had committed it.
As we noted in State v. Brumley, 320 So.2d 129 (1975) in likewise reversing a conviction because of the denial to an accused of voir dire rights:
"A defendant who is unable to inquire of potential jurors as to any tendentious attitude toward these criteria is unable to effectively make challenges for cause and peremptory challenges Defendant's questions were not an attempt to lecture on the law . . . nor were they an attempt to induce the jurors to commit themselves in advance. Nor does it offer adequate security toward obtaining an unbiased jury, for a potential juror, in response to the general question whether he will accept the law as given him by the court, to recite that he will accept such instruction when the juror has no concept of the complex nature of the law and where the issue is so interrelated to basic rights * * *."
The state suggests that the error was cured by the trial court's instructions to the prospective jurors that they must accept the law as given to them by the court, to which they assented, and by general instructions as to the presumption of innocence. This suggestion overlooks the historic function of voir dire examination.
As we stated in State v. Hills, 241 La. 345, 129 So.2d 12, 31 (1961):
"It is a general view as to voir dire examination that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective juror so that he may exercise intelligently and wisely his right of peremptory challengesince each party has the right to put questions to a juror not only to show that there exists proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered. It is by examination into the attitudes and inclinations of jurors before they are sworn to try a case that litigants are enabled to reject those persons, by use of peremptory challenges where necessary, who are deemed to be unlikely to approach a decision in a detached and objective manner. The Constitution itself (La.Const. of 1921, Art. 1, Sec. 10) guarantees to the accused the right to peremptorily challenge jurors.... The intelligent exercise of the right of rejection, by use of those twelve peremptory challenges, is the meat of the privilege, and can be substantially weakened by a restriction of questionsthe answers to which might be regarded as informative of a juror's attitude and therefore of vital importance to his defense."
See also other instances where convictions were reversed because of improper curtailment of voir dire examination, such as: State v. Jones, 282 So.2d 422 (La.1973); State v. Crittle, 263 La. 418, 268 So.2d 604 (1972) (opinion authored by Hamlin, J.); State v. Henry, 196 La. 217, 198 So. 910 (1940); State v. Guidry, 160 La. 655, 107 So.2d 479 (1926). See also American Bar Association Standards for the Administration of Justice Relating to Trial by Jury, Standard 2.4 and official commentary thereto (1968).
These cited decisions hold that in Louisiana the accused's intelligent exercise of his substantial right to exercise peremptory challenges or challenges for cause cannot be curtailed by the exclusion of non-repetitious voir dire questioning reasonably exploring potential misunderstandings of law, predispositions, or prejudices *198 of prospective jurors relevant to the issues of the case in which they will serve.
We therefore hold that, since the present accused was denied his exercise of this basic trial right, his conviction must be reversed and the matter remanded for a trial in accordance with law.
This trial was held prior to the adoption of the 1974 constitution. Nevertheless, the importance of the traditional rights here asserted is emphasized by their explicit recognition by the Louisiana Constitution of 1974, Art. I, Section 17: "* * * The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. * * *."

Other Bills of Exceptions
Other Bills:
Six other bills of exceptions were reserved and perfected.
We need here note only that two of them raise substantial issues of trial conduct which probably will not arise on the re-trial: Bill No. 4, where the trial court sustained an objection to a question attempting to lay a foundation for securing as inconsistent with trial testimony a pretrial statement of the accused, cf. State v. Sbisa, 232 La. 961, 95 So.2d 619 (1957); Bill No. 5, where the defense was denied an opportunity to inspect (or at least have the trial court inspect in camera) a document used by the witness to refresh his memory on the stand and after doing so gave testimony which varied from his earlier trial testimony, see State v. Perkins, La., 310 So.2d 591 (1975).
The other bills, at least as raised, do not present substantial issues.

Decree
For the reasons assigned, we reverse the conviction and sentence and remand for a new trial.
Reversed and remanded for a new trial in accordance with law.
SANDERS, C.J., and MARCUS, J., dissent.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
In order to support a contention that he had been denied a wide latitude on voir dire examination, an appellant must make the entire voir dire examination a part of his assignment of error.[1] Such a contention may be likened to the problem presented by a contention that there is no evidence of an essential element of the crime to support the verdict of the trier of fact. A full record is required for this court to conclude that there is no evidence at all to support proof of an essential element of the crime.
By the same logic, and for the same reasons, it cannot be said that appellant's inquiry on voir dire was not given the wide latitude the law requires unless the entire voir dire examination at issue is presented for review.
Here, on the basis of two questions propounded to the prospective jurors, the Court finds that "The foreclosing of the lines of inquiry effectively denied the accused the voir dire right of ascertaining the prospective jurors' understanding of an attitude toward the presumption of innocence...."
The Court also finds: "Thus, we are not, here, faced with a situation where the *199 questions were truly repetitious or where wide latitude or voir dire examination had in fact afforded the accused a reasonable opportunity to uncover predisposition...."
These findings of the court are, in my view, based upon conjecture and speculation. Appellant did not make the entire transcript of the relevant voir dire examination a part of his assignment of error, and the entire voir dire examination is not a part of the record on appeal. Only by a review of the entire testimony of the voir dire examination can it be ascertained whether a proper latitude has been accorded defense counsel in his inquiry into the competency and impartiality of the prospective juror.
Under these circumstances, where appellant has not made the entire voir dire part of his assignment of error, and it is not a part of the record, the Court should, instead of speculating that the latitude allowed defense counsel has been unduly restricted, rely upon the per curiam of the trial judge. Here the trial judge painstakingly explained his ruling on these questions, pointing out that "Further during the voir dire all of the jurors stated that they could accept these principles of law and more particularly the presumption of innocence and the requirement of proof of guilt beyond a reasonable doubt." He stated, also, that the questions were repetitious and were not permitted for that reason. Other cogent reasons for not allowing the particular questions at that particular time were assigned. According to the per curiam, the jurors were carefully instructed on that point in his charge before they retired.
But these isolated rulings of the trial judge do not mean that he was denied a proper latitude on the same proposition elsewhere in the voir dire examination. Only a review of the entire voir dire can serve to support such a finding.
I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
On application of the state we granted a rehearing in this matter to reconsider the alleged error in the conduct of the trial which caused us originally to reverse defendant Monroe's conviction and order his case retried. Originally we found error in the trial court's curtailment of defense counsel's questioning of prospective jurors during voir dire examination, specifically, the judge's decision not to allow these two questions concerning the presumption of innocence:
"Does it present any problems to you or do you have difficulty in accepting the fact that it is better to see a crime go unpunished than to find the wrong man guilty. Can you accept that?" (Bill of Exception No. 1.)
"If the State should fail to prove who did in fact commit the crime and you are satisfied that we didn't, could you find him not guilty?" (Bill of Exception No. 2.)
At the time we originally heard this matter, we had before us only a partial transcript containing these questions, not a complete transcript of the voir dire examination. Since we felt that the trial judge's disallowance of these two questions foreclosed defendant's inquiry into the jurors' understanding of the important area of presumption of innocence, we reversed Monroe's conviction.
With the expressions of law contained in that original opinion we are still in accord. And the opinion was correct both as to the law expressed and the result therein on the basis of the record and partial transcript then before us. On application for rehearing, however, the state presented more extensive excerpts from the voir dire, and after oral argument we ordered the record supplemented by the entire transcript of the voir dire examination. Upon reviewing that full transcript, we discovered *200 that defense counsel was indeed afforded wide latitude in his questions on voir dire, particularly with respect to the prospective jurors' attitudes toward the presumption of innocence. Defense counsel asked this question of the jurors:
"Now, realizing that the State has already indicated to you that the defendant is to presumed innocent and the Court will instruct you on the presumption of innocence at the close of the trial, in that instruction, could you accept such instructions such as the defendant sits here, now that he is to be presumed innocent? Can you accept that? Does anybody have any difficulty with it?"
After a negative response, defense counsel continued:
"Now as the State explained to you that the crime of armed robbery that they will attempt to prove certain elements and in the State's own words, they have indicated six elements, I ask you now if the State should fail to prove one of those elements, just one, would you find the defendant not guilty? If there is anyone who has difficulty with that would you raise your hand?"
After another negative response, defense counsel again questioned the jurors:
"Of course, the Court will instruct you that all of these elements mentioned by the Assistant District Attorney must be proved to your satisfaction beyond a reasonable doubt and if any has not been proved to your satisfaction and beyond a reasonable doubt, you will have the duty to find the defendant not guilty. Now, could you accept the law as to the defendant not having anything to prove? In other words, the defendant doesn't have to prove that he is not guilty, the State has to prove that he is guilty. Can you accept that? Can each juror accept that or prospective juror accept that? Does anybody have any difficulty with that? Would you please raise your hands?"
Furthermore, the areas of inquiry on voir dire were not limited by the trial judge. Counsel was permitted extensive opportunity to probe the jurors' attitudes so as to permit selection of an impartial jury. State v. Jones, 282 So.2d 422 (La.1973). While the two questions in their form and substance were permissible inquiries on voir dire examination, their disallowance by the trial judge is not reversible error because adequate exploration of the area of presumption of innocence was otherwise permitted.
Therefore, although we re-emphasize that we consider our original opinion a correct statement of the law, we find that this defendant was afforded sufficient latitude in his questioning of prospective jurors on voir dire, especially as it related to presumption of innocence. Therefore, the judge's decision to disallow the two questions at issue here does not constitute reversible error.
BILL OF EXCEPTION NO. 3.
During voir dire examination, defense counsel attempted to make a note of evidence which would reflect that all juors that had been excused by the state up to this point had been black and had given answers similar to those given by all of the other prospective jurors. The trial judge denied counsel's request to make a note of evidence, and defense counsel reserved a bill of exception.
Defendant argues to this Court that the judge's failure to allow him to make a note of evidence violated his right to a fair and impartial jury trial guaranteed by the sixth amendment to the Constitution of the United States. He argues that in order to prove an allegation of systematic exclusion of blacks by the prosecutor's use of peremptory challenges he was entitled *201 to use the mechanism of the note of evidence. Although his argument is not clear, he seems to be saying that the judge's refusal prevented his being able to make a record in this case which could conceivably be used, along with other such evidence, by other defendants in other trials to prove that this prosecutor exercises his peremptory challenges in such a way as to systematically exclude blacks from the jury box.
In the case of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court held that a prosecutor's striking of all blacks from a jury venire in a particular case does not constitute a denial of equal protection of the laws. However, the Court held that if a defendant could establish that a prosecutor unfairly exercised his peremptory challenges so as to exclude blacks from serving on juries over a period of time, a fourteenth amendment violation would have been proved. In order to properly pose the issue, however, the defendant must show on the record the prosecutor's systematic use of peremptory challenges to exclude blacks over a period of time, a showing this defendant had not made. It was evidently to meet this Swain test that this defense counsel attempted to make his note of evidence so that he could later establish systematic exclusion of blacks in a subsequent case, presumably involving a different defendant and a different crime but the same prosecutor.
We appreciate this counsel's attempt to meet the test of Swain, if that in fact was his intention, but the trial judge was correct in refusing to admit the "evidence" offered. Even had the note of evidence been made, the defendant could not have proved, under the Swain test, that he was the victim of discriminatory use of peremptory challenges. To do that, he would have had to develop an independent record of prior systematic exclusion which he could then have offered into evidence at his trial.
We hold, therefore, that the refusal of the trial judge to accept into evidence material to be used in a future case was not improper.
BILL OF EXCEPTION NO. 4.
During cross-examination by defense attorney of the robbery victim, the witness stated that his testimony was based on what he remembered of the incident. When asked whether he had recently read the written, signed statement he had earlier given to the police so as to refresh his memory prior to his court appearance, the witness responded that he had only read the statement "on the day it happened," the date of the crime. Without any other attempt to lay a foundation for securing the statement, defense counsel moved to have the statement produced at that time. When the state's objection to the motion was sustained, this error was noted.
In arguing to this Court that the judge's refusal to grant his motion was error, the defendant relies on our decision in State v. Tharp, 284 So.2d 536 (La.1973).
In State v. Tharp, supra, this Court held that when a witness testified from his recollection of the contents of a report about an event, rather than from his memory of the event itself, it was reversible error for the trial judge to refuse to order the state to produce a copy of the report for the defendant.
Tharp is distinguishable from the case before us. Here, the witness testified that he was relying on what he remembered at the time of the commission of the robbery, not a written statement about the crime. He testified, in fact, that he had read the statement only on the day of the crime.
When a witness testifies that he remembers the event in question and is relying *202 on his memory, not a written statement which he had read, the jurisprudence of this state does not require that the statement be produced. State v. Singleton, 321 So.2d 509 (La.1975); State v. Payton, 294 So.2d 211 (La.1974). The trial judge properly denied the motion to inspect the report.
BILL OF EXCEPTION NO. 7.[1]
During cross-examination of Officer John Fields, defense counsel asked what time he received the initial police call that an armed robbery had been committed. Officer Fields answered that he did not recall the exact time and did not remember sufficiently to give an approximation. Upon further questioning, he stated that it was in the early afternoon and that it might have been about 2:30, although he did not remember exactly. He further related that he did not prepare a report, but that a report of the incident had been prepared by another police officer. Thereafter, defense counsel asked the witness if the police report would refresh his memory as to the exact time that he received the call. The state objected to the question, the witness was not permitted to respond, and the trial judge instructed the officer to look at the report. Thereupon the officer related that the incident occurred at 3:15 p.m and the call was dispatched at 3:20 p.m. At this point, counsel for defendant moved for an in-camera inspection, a request which was denied by the trial judge with this comment to the defense attorney: "You are not going to ask the question and use that to get the report. You asked him to look at the report, now proceed with the questioning."
Defendant argues that he was entitled to the inspection on the authority of State v. Perkins, 310 So.2d 591 (La.1975) and State v. Tharp, supra. Perkins and Tharp are, of course, authorities for the proposition that a defendant is entitled to examine a report used by a witness to refresh his memory while testifying. However, Perkins and Tharp are distinguishable from the case at hand. Here we do not have a case in which a witness has offered ostensibly important testimony prompted by review of a written report or document. Rather we have a situation in which the witness was apparently satisfied to testify that he did not recall the time of receipt of the police call, and in which the appropriate time of 3:15 in the afternoon had already been testified to by his partner. Under these circumstances defense counsel insisted upon the witness' referring to a report not prepared by him. Apparently the attorney hoped to establish his right to review the document so that he could use it for purposes of discovery. The trial judge was aware of counsel's purpose, and he indicated, before requiring the officer to review the report and give testimony concerning the time, that he did not think that an appropriate predicate had been laid for production of the report.
Under these circumstances, we find no error in the trial court's determining, in effect, that counsel would not be permitted to press for an apparently insignificant answer, insist upon the witness' reviewing the report prepared by another, and then, on the strength thereof, call for the report, not for the purpose of verifying the response, but for the purpose of discovery.
The bill of exception lacks merit.
*203 BILL OF EXCEPTION NO. 8.
Defendant argues that the photograph of defendant's fingerprint taken from the victim's delivery truck was improperly introduced into evidence because the state's expert did not apply a "control" test to determine how long the print had been on the truck. The defendant relies on Ivey v. State, 176 So.2d 611 (Fla.App.1965), a decision of the Florida Court of Appeal which held that fingerprint evidence can be used in Florida courts to prove identity only when the state can establish that the print could have been made only at the time the crime was committed. This is not the rule in Louisiana. According to our jurisprudence, evidence such as this fingerprint is admissible so long as the trial judge is satisfied that the object has a logical or rational connection with the fact sought to be proved. State v. Adams, 296 So.2d 278 (La.1974); State v. Vassel, 285 So.2d 221 (La.1973). It is the jury's province to decide connexity. Here, the fingerprint evidence did bear a logical relationship to the fact the state sought to prove that Arthur Monroe touched the handle of the victim's truck. The victim, a route salesman, testified that he "heard a noise on my left door" and that the robber had the latch open. Fingerprints, identical to those of Arthur Monroe, were taken from the handle of the truck by the state's expert. He testified on cross-examination that he did not know when the prints were placed on the truck because it could not be determined how long a fingerprint has been on a given surface. This testimony provided a basis on which the trial judge could properly decide that there was a logical relationship between the fingerprint evidence and the fact to be proved. The bill of exception lacks merit.
For the foregoing reasons, the conviction and sentence of Arthur Monroe is affirmed.
NOTES
[1] La.C.Cr.P. art. 804(A) (1968) provides:

"In all cases the court shall charge the jury that:
"(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;"
"(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and"
"(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty."
"The court may, but is not required to, define `the presumption of innocence' or `reasonable doubt' or give any other or further charge upon the same than that contained in this article."
It is to be noted that, since the accused is not entitled as of right to further explanation, by the court of his presumption of innocence, voir dire examination may be important to establish the understanding of this principle by prospective jurors.
The importance of the right of the accused to a presumption of innocence on his trial before an American court is emphasized by the reiteration of this ancient principle by the Louisiana Constitution of 1974, Art. I, Section 16: "Every person charged with a crime is presumed innocent until proven guilty. * * *."
[1] Here a bill of exceptions was reserved prior to the effective date of the change to assignments of error. However, the same rule applies to assignments of error, except that a reference to the pages of the transcript relied upon will suffice instead of attaching those pages to the bill of exceptions as was formerly the practice.
[1] Although eight formal bills of exception were reserved by defendant, two of the bills were not argued in brief. Both of these bills were taken during cross-examination of the victim of the crime; one dealt with the victim's statement to police and the other concerned his identification of defendant's shirt. Since they were not argued by defendant in brief, they are deemed abandoned. State v. Dominque, 298 So.2d 723 (La.1974).