SUMMERS, Justice.
Appellant Milton Rutledge, while serving a sentence in the State Penitentiary, having been convicted of a felony, applied to the court of his conviction in St. Landry Parish for habeas corpus. The writ was granted and Rutledge was transported to Opelousas for the hearing.
After the hearing, when he was being returned to the penitentiary in the custody of Officer James T. Herron on April 21, 1969, Rutledge attempted to escape by bolting from the automobile in which he was riding and then fleeing on foot. He was apprehended shortly thereafter, and the return trip to the penitentiary was resumed. The attempt to escape occurred in St. Landry Parish.
Based upon these facts, a bill of information charging simple escape was filed against Rutledge by the District Attorney of St. Landry Parish on October 23, 1969. Rutledge was then returned to St. Landry Parish to face trial on this charge. With the assistance of court-appointed counsel, he entered a plea of not guilty to the charge of simple escape. On November 14, 1969 Rutledge withdrew his not guilty plea and entered a plea of guilty to attempted simple escape. The judge then imposed a sentence of imprisonment for one year at hard labor in the State Penitentiary, to run consecutively with the sentence he was then serving as required by Article 110 of the Criminal Code.[1]
Thereafter, on December 15, 1967, Rutledge filed a petition for habeas corpus, setting forth that the record was silent on his guilty plea of November 14, 1969, there being no affirmative showing that he had been informed of his constitutional rights or that he had voluntarily waived those rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 *549 (1969). At a hearing held on this application on January 3, 1970, Rutledge’s contention was upheld and the sentence of November 14, 1969 was vacated and set aside by order dated March 7, 1970. The State was granted 90 days within which to institute new proceedings against him.
Within the time allowed, the District Attorney of St. Landry Parish initiated new proceedings against Rutledge, and the court fixed April 6, 1970 as the date for the trial on a charge of attempted simple escape based upon the facts of the April 21; 1969 incident.
Rutledge was tried before a jury on April 6, 1970 and found guilty. A sentence of two and one-half years’ imprisonment was imposed by the trial judge.
From the conviction and sentence Rutledge has appealed. Four errors at the trial are assigned, upon which he relies for reversal of his conviction and sentence.
I.
In preparation for trial, defense counsel applied for and was granted a subpoena duces tecum,
commanding the custodian of the medical records of Milton Rutledge at the Louisiana State Penitentiary in Angola, Louisiana, to produce in open court on the 6th day of April, 1970, * * * The medical records of Milton Rutledge held by the custodian at the Louisiana State Penitentiary.
On the day of the trial, Rutledge’s medical records had been delivered to the Clerk of Court by penitentiary officials and were available to the defense. Defense counsel contended, however, that the subpoena contemplated not only delivery of the records, but that the custodian of those records would also be present to explain and interpret them. Pie argues that the custodian’s testimony was required to interpret- the medical records and support his theory that Rutledge was physically incapable of running away as the State contends. The trial judge held that since the records had been produced in court the subpoena had been complied with. The jude observed in his per curiam that a subpoena ad testificandum would have been the proper order to compel the attendance of the custodian as a witness. And since defense counsel did not apply for the subpoena ad testificandum he could not complain. Defense counsel’s error, if it was such, cannot he imputed to the State.
We agree with this ruling.
II.
During the trial the State called Officer James T. Herron, the prison custodian who was transporting Rutledge to the State Penitentiary after the first hearing in Opelousas.
*551 Referring to Rutledge, the District Attorney asked Herron, “In what manner did he leave the car when he got’ out?”, to which Herron replied, “He just jumped out, and he told me, ‘good-bye Mr. Herron’ and he left.” Whereupon counsel for the defense objected and asked for a mistrial, stating that this was the second time Herron testified to what Rutledge told him.
Previously Plerron had testified to these same remarks, and defense counsel had objected that he had not been advised in writing prior to the State’s opening statement that the remarks, which he considered inculpatory, would be used in evidence as required by Article 768 of the Code of Criminal Procedure.[2]
The inculpatory statement contemplated by Article 768 “refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events.” State v. Fink, 255 La. 385, 231 So.2d 360 (1970).
These out-of-court utterances of Rutledge were incidents of the criminal act and therefore formed part of the res gestae admissible in evidence under the explicit provisions of Section 448 of Title 15 of the Revised Statutes. See also State v. Fink, supra.
III.
While the Assistant District Attorney was making his closing argument to the jury he said, “Mr. Herron trusted Milton Rutledge, he didn’t even handcuff him, he brought him here.” At this point in the argument, Allen Dohman, one of the jurors, stood up and shouted, “he should have!” Counsel for the defendant at this juncture moved for a mistrial because he asserted the juror’s exclamation was highly prejudicial to the defense and constituted a violation of the juror’s oath. The motion was denied, and a bill reserved and perfected.
Although we must point out that the juror’s conduct was improper, we cannot say that the outburst involved a violation of his oath as a juror. And we agree with the trial judge that the conduct furnishes no basis for a mistrial. As the record reveals, when the jury was polled at the request of counsel after verdict, Dohman, the offending juror, disclosed that he voted for acquittal. This convinces us that no prejudice resulted to the defense.
IV.
After verdict and sentence, defense counsel objected to the imposition of two *553 and one-half years’ imprisonment contending that the court could not constitutionally impose a greater sentence after reconviction than the one-year sentence originally imposed and set aside at the defend-' ant’s urging.
The basis for this contention is the decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), wherein the United States Supreme Court held:
Whenever a judge imposes a more severe sentence upon a defendant after a new. trial, the reasons for his doing so must affirmatively .appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing .proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
Because the reasons for the disparity between the one year and two-and-one-half year sentences do not appear in the record, the sentence is constitutionally objectionable under the Pearce holding. And, because the record cannot be altered once an appeal has been taken, we may not remand the case • for this factual data to be supplied. • We must, therefore, remand the case for correction of sentence under the rules prescribed by the Pearce decision as in the case of an illegal sentence. La. Code Crim.P. art. 882.
The conviction is affirmed. The case is remanded to correct the illegal sentence.

. La.Grim. Code art. 110 :
Simple escape is
(1) The intentional departure of a person, while imprisoned, whether before or after sentence, under circumstances wherein human life is not endangered, from lawful custody of any officer or from any place where he is lawfully detained by any officer; or
(2) The intentional failure or refusal of any person serving a sentence and participating in a work release program authorized by law to report to or return from his planned employment or other ac.tivity under said program.
Whoever having been sentenced to the Louisiana State Penitentiary, commits the crime of simple escape shall be imprisoned at-hard labor for not less than two years and not more than five years; provided that such sentence shall not run concurrently with any other sentence.
Whoever not having been sentenced to the Louisiana State Penitentiary, commits the crime of simple escape shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both; provided that such sentence shall not run concurrently with any other sentence.

. La.Code Crim.P. art. 768:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not bo admissible in evidence.