843 So.2d 439 (2003)
STATE of Louisiana
v.
Lawrence HOWARD.
No. 2002-KA-2435.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2003.
*440 Eddie J. Jordan, Jr., District Attorney, Kristen Keller, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.
This appeal concerns a resentencing only.
Lawrence Howard was found guilty of possession with the intent to distribute cocaine, in violation of La. R.S. 40:967, after a bench trial on January 29, 1998. The State filed a multiple bill of information on March 20, 1998, and the defendant pled not guilty to the multiple bill. At sentencing on October 6, 1999, the trial court sentenced the defendant to serve fifteen years at hard labor.
On appeal, the defendant alleged that he had not been adjudicated a multiple offender on October 6, 1999, even though he was allegedly sentenced under the multiple offender statute. This court ordered the trial court to submit the transcript of the multiple bill adjudication. On September 13, 2001, the trial court conducted a multiple bill hearing. The defendant was adjudicated a second felony offender and sentenced to seventeen years at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, this court affirmed the defendant's conviction; however, his adjudication and sentence under the multiple bill were reversed, and the case was remanded.[1]State v. Howard, 2000-2700 (La.App. 4 Cir. 1/23/02), 805 So.2d 1247.
On May 10, 2002, at the multiple bill hearing, the defendant was found to be a second offender and was sentenced to serve eighteen and one-half years at hard labor without benefit of probation or suspension of sentence.
The facts of the case as presented in the earlier appeal are as follows:
Officer Dennis Bush testified that on the afternoon of March 25, 1997, he was conducting a surveillance of the 1900 block of St. Ann Street when he observed the defendant engage in a narcotics transaction. The officer then saw the defendant put a package in a gray Oldsmobile parked at the intersection of Roman and St. Ann Streets. The officer confiscated the package and found it to contain four rocks of crack cocaine. Detective Nelson found two hundred twenty-five dollars on the defendant. Lakeisha Green attempted to approach the defendant's vehicle. The officer told her to step back. The officer stated that he knew Leroy Toca, but Leroy Toca was not at the scene.
Officer Russell Nelson was on patrol with Officer Bush when they observed the defendant engage in a narcotics transaction. The defendant placed a package in a gray Oldsmobile after the transaction. The officers confiscated the package and found it to contain four rocks of crack cocaine. Upon searching the defendant, Officer Nelson found two hundred twenty-five dollars in U.S. currency. Officer Nelson also stated that he knew Leroy Toca. Toca lived at 1833 *441 St. Ann Street. The officer testified that Toca came out of his residence while the officers were investigating the defendant. The officer stated that he did not recall seeing anyone playing football or a woman asking for the defendant's car keys.
Lekeisha Green testified that she resided at 1732 St. Ann Street. She was present when the defendant was arrested. The witness stated that she, the defendant, Leroy, Corey and Diane Jones were standing on the corner talking. The defendant, Leroy and Corey were throwing a football. She did not see the defendant take any money from anyone. When the police arrived, they told her to step across the street. The police put the defendant on the police vehicle and "checked" him. The officers put Corey against the wall and patted him down. The officers then let Corey go. The witness identified the three officers as "Dennis", "Arthur" and "Duke." The witness stated that she did not see the officers go into the defendant's car or take anything out of the vehicle. She asked Officer Bush for the car keys and he told her "not right now." The witness further testified that she had seen the same officers arrest Leroy Toca on previous occasions. She stated that the officers did not arrest Leroy on the day in question. She indicated that she had never seen any of the guys sell drugs.
Detective Arthur Powell testified that he was not present when the defendant was arrested. The officer stated that he knew Lekeisha Green from the neighborhood. The officer acknowledged that he used to patrol the neighborhood with Officers Bush and Nelson.
Lawrence Howard testified that he was employed as a welder at Avondale Shipyards. On March 25, 1997, he was on Easter vacation. He was playing football with Leroy, Corey and Corey's little brother that afternoon. LeKeisha Green and Diane Jones were also outside. The defendant denied possessing and selling cocaine. When the officers arrived on the scene, they put him against a wall and told him that they were going to arrest him for loitering. The officers did not go to his car until after LeKeisha asked the officers for the defendant's car keys. The defendant denied having cocaine in his car. He stated that he did not use cocaine. The defendant acknowledged a prior conviction for accessory after the fact to second degree murder. The defendant testified that Leroy Toca is his cousin. He stated that he knew Leroy sold drugs. The defendant also testified that Arthur Powell was one of the officers on the scene. He further stated that Leroy was also arrested that day. The defendant stated that Leroy was in his house when the officers arrived on the scene but came outside as the officers were arresting him.
Corey Lewis testified that he was on the scene when the defendant was arrested. He stated that the police officers drove the neighborhood once before they stopped and arrested the defendant. The defendant was using a pay telephone the first time the officer drove through the neighborhood. The witness and his brother, Adonise Reth, were throwing a football. The second time the officers drove past, the defendant, the witness and Reth were playing football. The police officers got out of their vehicle and handcuffed all three of them. The officers put the defendant in the police car. LeKeisha Green asked the officers for the defendant's car keys. The officers involved were Powell, Nelson and Bush. When LeKeisha asked the officers for the car keys, one of the *442 officers went to the defendant's car. The witness stated that he heard the officer say that he did not find anything in the car. The witness further testified that the defendant did not possess or sell cocaine that day. The witness also indicated that Leroy Toca had been outside for a while but then went inside his residence. Leroy came back outside after the officers arrested the defendant. The witness stated that he knew Leroy Toca had been arrested on prior occasions.
Adonise Reth testified that he, his brother, Corey Lewis, and the defendant were playing football when the police officers arrived on the scene. The officers stated that the defendant was going to be arrested for loitering. The witness further testified that the defendant did not sell cocaine that day.
Leroy Toca testified that he has two convictions for possession of cocaine with the intent to distribute. He stated that Officers Bush, Nelson and Powell were on the scene when the defendant was arrested. Powell drove up while Bush and Nelson were detaining the defendant. Powell asked if everything was okay and then left. The witness stated that he had been outside earlier in the afternoon playing football with the defendant, Corey and Adonise. He then went inside his residence. The witness stated he came out of his house while the officers were arresting the defendant. The officers told the witness to go back inside. The witness stated that he did not put anything in the defendant's car, nor did he see anyone else put anything in the defendant's vehicle.
State v. Howard, 805 So.2d at 1251-1253.
The defendant, through counsel, now makes two assignments of error regarding his sentence: (1) the trial court erred in increasing an excessive sentence without any stated reason, and (2) the defendant is entitled to immediate discharge for the court's delay in imposing a final sentence.
As part of the first assignment, the defendant maintains that an error patent occurred in that he was sentenced for his entire term without benefit of parole, probation or suspension of sentence. However, the transcript of sentencing on May 10, 2002, indicates that his eighteen and one-half year term was imposed without probation or suspension of sentence as mandated by La. R.S. 15:529.1(G). The defendant's parole eligibility was not considered although under La. R.S. 40:967(B)(4)(b) a sentence must be imposed without benefit of parole, probation, or suspension of sentence for five years. Thus, the sentence appears to be illegally lenient because parole was not restricted.
However, paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court. Moreover, in State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, the Supreme Court has ruled that paragraph A self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the trial court's failure to specify that the defendant's sentence be served without benefit of parole for five years. The correction is statutorily effected. La. R.S. 15:301.1(A).
We find merit in the first assignment of error that the trial court erred in increasing an excessive sentence without any stated reason. As the defendant points out the defendant was sentenced *443 three times and each time his sentence increased. Initially the sentence was fifteen years at hard labor; next it was seventeen years without benefit of parole, probation, or suspension of sentence. On May 10, 2002, Howard was sentenced as a second offender to serve eighteen and one-half years without benefit of probation or suspension of sentence. The trial court gave no reasons for increasing the sentence.
In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled in part by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the court held that the Due Process Clause of the Fourteenth Amendment prevented an increased sentence following a retrial if the increase in the sentence was motivated by vindictiveness against the defendant, because the fear of such retaliation would have a chilling effect on the defendant's exercise of his appeal rights. The court held that, when a judge imposes a more severe sentence upon a defendant after a new trial, the reasons must affirmatively appear in the record and must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. The court in Pearce found that this need for objective information arises because, without it, there is a presumption that the greater sentence is imposed for a vindictive purpose.
The Louisiana Supreme Court followed Pearce in State v. Rutledge, 259 La. 543, 250 So.2d 734 (1971), in which a defendant's guilty plea and sentence of one year imprisonment were vacated and defendant was subsequently tried before a jury, convicted, and sentenced to two and one-half years imprisonment. Because the reasons for the increase in the sentence did not appear in the record, the court found that the second sentence was constitutionally objectionable under Pearce. See also State v. Allen, 446 So.2d 1200, 1202-1203 (La.1984).
In Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the defendant entered guilty pleas to charges of burglary and rape in exchange for the dismissal of a sodomy charge. The defendant later successfully had his guilty pleas vacated by an appellate court. He then proceeded to trial on all three original charges, was convicted on each, and received greater sentences than those imposed after his guilty pleas. The trial court stated that the greater sentences were being imposed because of evidence presented at trial of which the court was unaware at the time of the defendant's first sentencing. The United States Supreme Court found that, when a greater sentence is imposed after a trial than was imposed after a guilty plea, the presumption of vindictiveness present in Pearce does not exist because the trial court is generally privy to less relevant sentencing information after a plea than after a trial, such as the full nature and extent of the crimes and the defendant's conduct during the trial itself, and because the factors for leniency attendant to a guilty plea are no longer present after a trial. Alabama v. Smith, 490 U.S. at 801, 109 S.Ct. at 2205-06.
None of the considerations present in Alabama v. Smith is present in this case. The defendant did not enter a guilty plea to the original charge. He never admitted to his status as a second offender, and the transcript of sentencing indicates no bargain for a particular sentence.
In the instant case, the trial court gave no reasons for the increased sentence of eighteen and one-half years. The defendant faced a range of fifteen to sixty years, and his increased sentence was a twenty-three *444 percent increase above his original sentence of fifteen years. Therefore, under Pearce, we find the sentence must be vacated, and the case remanded for resentencing.
The defendant's argument that his sentence is excessive is moot.
The second argument, that the delay in imposition of sentence entitles the defendant to immediate discharge, was considered in his first appeal where this court found the error without merit because he was not prejudiced by the delay. Under La.C.Cr.P. art. 874 excessive sentencing delays deprive the court of jurisdiction to sentence a defendant.[2] Howard was convicted on February 13, 1998 and he pleaded not guilty to a multiple bill on March 20, 1998. After the bill was amended, he again pleaded not guilty on April 17, 1998. He was initially sentenced on October 6, 1999 to serve fifteen years at hard labor. After the matter was before this court and it was determined that no multiple bill hearing had occurred, the case was remanded to the trial court, and on September 13, 2001, there was a multiple bill hearing and the defendant was sentenced to seventeen years at hard labor. He appealed, and this court vacated his multiple offender adjudication and sentence. On May 10, 2002, Howard was again found to be a second offender and was sentenced to serve eighteen and one-half years at hard labor without benefit of probation or suspension of sentence.
The delays in sentencing occurred solely through the acts and omissions of the trial court. The record is devoid of any factors or circumstances that would justify any delay. However, relief would be available to Howard only if the evidence shows that he was prejudiced by the delay in sentencing. State v. Stewart, 98-1215, p. 5 (La. App. 4 Cir. 3/10/99), 732 So.2d 74, 76. Howard faced a minimum sentence of fifteen to sixty years at hard labor for distribution of cocaine in violation of La. R.S. 40:967 and La. R.S. 15:529.1(A)(1)(a). Because the defendant knew his ultimate sentence would be under the Habitual Offender Bill, he could not have expected a less severe sentence upon re-sentencing as a habitual felony offender and he was not prejudiced by the delays. This assignment is without merit.
Accordingly, for the reasons cited above, the defendant's multiple offender adjudication is affirmed, his sentence is vacated, and the case is remanded for resentencing.
ADJUDICATION AFFIRMED; SENTENCE VACATED AND REMANDED.
NOTES
[1] The defendant's sentence was reversed after this court found that the defendant was denied effective assistance of counsel at the multiple bill hearing and the documentation supporting the multiple bill was not included in the appeal record.
[2] La.C.Cr.P. article 874 provides that "[s]entence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the appellate court."